FRIEL, *Appellant*, v. THE CITIZENS' RAILWAY.

Division One, May 8, 1893.

115 503
100a ¹561

1. **Master and Servant:** APPLIANCES: RAILROAD. A master is not required to furnish to the servant for use in the master's work the very best appliances obtainable, but only to use all reasonable care and caution in providing appliances which are reasonably safe and fit for the designed use.

2. ——: ——: ——: REASONABLE CARE. What is reasonable care in the foregoing respect will depend much on the danger to be apprehended from the use of the appliance in the performance of the particular work in hand.

*Appeal from St. Louis City Circuit Court:* HON. L. B. VALLIANT, Judge.

AFFIRMED.

*H. D. Laughlin* and *Gibson, Bond & Gibson* for appellant.

(1) If the facts in evidence are such that two inferences may be drawn from them, the one, importing negligence, the other not importing negligence, then the law is that the case must be referred to the jury, to determine which of these inferences should be drawn from the evidence. *Petty v. Railroad*, 88 Mo. 306; *Wilkins v. Railroad*, 101 Mo. 93; *Usher v. Railroad*, 100 Mo. 194; *Taylor v. Railroad*, 26 Mo. App. 336; *Cox v. Syenite Granite Co.* 39 Mo. App. 424; *Huhn v. Railroad* 92 Mo. 440. (2) A master is bound to provide reasonably safe appliances for his servants; and while the servant has the right to assume that safe

appliances have been furnished, it is the master's duty to exercise due care, in inspecting such appliances, and examining them for the discovery of defects. *Gutridge v. Railroad*, 105 Mo. 520. (3) *First.* Knowledge of the danger arising from defective machinery as well as the existence of the defect, is necessary to bar a recovery by an employe suing a master for injuries resulting from a master's negligence in furnishing him with such machinery. *Second.* If the defective machinery is not of such a character that it may not be used by the exercise of great care, caution and skill, the servant does not assume the risk. *Conroy v. Iron Works*, 62 Mo. 35; *Stoddard v. Railroad*, 65 Mo. 514; *Thorpe v. Railroad*, 89 Mo. 650; *Waldhier v. Railroad*, 87 Mo. 33; *Huhn v. Railroad*, 92 Mo. 440. (4) A servant may recover for injuries sustained by the joint negligence of master and fellow-servant. *Young v. Shickle H. I. Co.*, 103 Mo. 324; Thompson on Negligence, p. 981; *Coppins v. Railroad*, 44 Am. & Eng. Railroad Cases, p. 134, note 2.

*Smith P. Galt* for respondent.

The allegation of the petition is that the grip, being held open by the conductor of said train so as to clasp and connect with the cable when the plaintiff should have raised it, suddenly seized said cable and caused the trucks of said grip-car to run over both of the legs of plaintiff. The evidence of plaintiff himself contradicted the allegation of the petition, that the grip while being held open by the conductor suddenly seized the cable, because his own testimony is "I got down to raise the rope with this short hook, the conductor stood ready to clasp the rope. When I raised the rope the conductor clasped it, and the grip gave a shoot forward like that and knocked me down, and I got under the

car and got this leg mashed and the flesh torn all off from here down." And there is no evidence whatever in the case that the grip appliances or hook were imperfect, insufficient and defective. *Keegan v. Kavanaugh*, 62 Mo. 230; *Nolan v. Schickle*, 3 Mo. App. 300; *Aldridge v. Furnace Co.* 78 Mo. 559; *Price v. Railroad*, 77 Mo. 508; *Porter v. Railroad*, 71 Mo. 66.

BLACK, P. J.—The defendant is a corporation operating a street cable railroad in the city of St. Louis. While the plaintiff was in the employ of defendant and in the discharge of his duties as gripman, a car ran over his legs, injuring them so that it became necessary to amputate one and the other was seriously injured; and this is a suit to recover damages for such injuries. The circuit court sustained a demurrer to the plaintiff's evidence, and the case is here to review that ruling.

The substance of the petition is, that defendant furnished an improper grip appliance, because of which the train started with a jerk and at full speed; and that a hook provided for the purpose of raising the cable was too short.

The evidence of the plaintiff shows that he had been in the employ of the defendant in the capacity of gripman for about one year. At the time of the accident he had charge of a grip-car. The cable dropped from his grip and he signaled the conductor to come to his assistance. He then got down in front of the car with a hook in his hand provided for his use. He says he got down to raise the cable; that when he raised it the conductor clasped it with the grip; and that the grip-car jumped forward and knocked him down. As to the hook, his evidence is to the effect that with a longer one the person using it could stand on the grip-car and in that way raise the cable without getting in

front of the car; that longer hooks were used on one or two cars; that the one he used was the same in length as those he had used for a year and the same as used on the other cars, with one or two exceptions.

His cross-examination shows that longer hooks had not been used on the cars at the time of the accident; that he had only seen them at the power house. Indeed it does not appear that long hooks were used on more than two cars after the accident. It seems the defendant had formerly used what are called compound dies, that is to say dies made of a compound of metals, the dies being placed in the jaws of the grip appliance to catch the cable. At the time of the accident the company was using tempered steel dies, which were harder than the others.

The evidence of the plaintiff and that of the witness Tobin is to the effect that steel dies caught the cable quicker than the other kind and sometimes started the car with a jerk. The witness Tobin, a policeman at the time of the trial, testified that he had been in the employ of the defendant; that before that he had had six years' experience on Kansas City cable roads; that before this accident he had a conversation with Mr. Brooks, the defendant's assistant superintendent, which conversation he relates as follows: "Brooks said the other dies were too slow, that they were going to get tempered steel dies for a trial. He asked me if I knew anything about them. He asked me if I used them on Ninth street and I told him I had. He asked me if I thought they were desirable or dangerous on the road. I told him I thought they were the best thing for the company in one way and in another way they were dangerous; I thought they were more dangerous than a bottom jaw grip because they were liable to catch at any time."

There is other evidence to the effect that the defendant and the Kansas City roads had abandoned the use of steel dies.

As between master and servant it is not the duty of the master to furnish the very best appliances that can be obtained. The duty of the master is to use all reasonable care and caution in seeing that the appliances are reasonably safe and fit for the designed use; and what is reasonable care in this respect must of course depend much upon the danger to be apprehended from the use of the appliance in the performance of the particular work. The question here is whether there is any evidence fairly tending to show a breach of this duty on the part of the defendant, and we think there is not.

As to the grip, there is certainly no evidence whatever tending to show that it was out of repair. The most that can be said of it is, that for some purposes the steel dies, in use at the time of the accident, were in some respects better than the compound dies and not so good in other respects; that upon the whole the compound dies were the best, because the safest. It does not appear nor is there any evidence tending to show that the steel dies were unfit for use. The defendant was endeavoring to adopt the best grip appliance it could obtain and the fact that these steel dies were subsequently discarded has nothing to do with this case. The question of negligence must be determined by the facts as they existed at the time of the accident. When this is done we cannot see that there is any evidence of negligence on the part of the defendant in using the steel dies.

There is certainly no evidence of negligence in furnishing the hook used by the plaintiff. It was just such a hook as he and the other gripmen had used for a year or more, and that too without any complaint,

so far as this record shows. It does not make out a case to show that a longer hook would have been better or safer.

This is one of those unfortunate accidents which often occur without culpable negligence on the part of the master and for which he is not liable.

There is much ground for the conclusion that the conductor did not properly manipulate the grip in this, that he grasped the cable so tight that it could not slip through the grip, but this suit is not founded on his negligence.

The judgment is affirmed. BARCLAY, J., absent; the other judges concur.