PATRICK DUNN, Respondent, v. FRANK NICHOL-
SON, Appellant.

**Kansas City Court of Appeals, March 5, 1906.**

1. **MASTER AND SERVANT: Instrumentalities: Absolutely Safe:
Care: Instruction.** The master is not an insurer and is only
required to use ordinary care that the appliance which he fur-
nishes the servant is reasonably safe; and an instruction mak-
ing it his absolute duty to furnish a reasonably safe appliance
is error.

2. ———: ———: ———: ———: ———. Suggestions as to cer-
tain instructions and their modifications are made.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,*
Judge.

REVERSED AND REMANDED.

*McAntire & Scott* for appellant.

(1) Plaintiff's instructions numbered 1 and 2 are
erroneous in that they, without qualification, tell the
jury to find for the plaintiff if defendant had not fur-
nished a reasonably safe appliance, when his duty is
only to exercise ordinary care to do so. Knight v. Lead
and Zinc Co., 91 Mo. 579; Bradley v. Railroad, 133 Mo.
307-308; Friel v. Railroad, 115 Mo. 503; Bohn v. Rail-
road, 106 Mo. 429. (2) Defendant's instruction num-
bered 3 covered the entire case and should have been
given. (3) Defendant's instruction numbered 4 was
based on plaintiff's theory of the case and if any instruc-
tions should have been given in the case, then defend-
ant's instruction numbered 4 should have been one of
them. Woerhide v. Car Co., 32 Mo. App. 371.

*W. J. Owen* and *W. R. Robertson* for respondent.

(1) The conditions and circumstances developed a case that imposed on the defendant the absolute duty of furnishing reasonably safe appliances, and the objection by defendant to plaintiff's instruction numbered 1, is not well taken; in fact, the instruction is broader in behalf of defendant than the law requires. Zellars v. Water & Light Co., 92 Mo. 117; Nash v. K. C. Brick Co., 83 S. W. 90, 109 Mo. App. 600. (2) If any defects or omissions occurred in plaintiff's instructions 1 and 2, they were supplied and cured by defendant's instructions, as all of the instructions must be read and construed together as a whole. Stumbo v. Zinc Co., 100 Mo. App. 636; Squiers v. Kansas City, 100 Mo. App. 630; Anderson v. Railroad, 161 Mo. 428; Perrette v. Kansas City, 162 Mo. 249; Knight v. Saddler L. & Z. Co., 91 Mo. App. 579 and 580.

ELLISON, J.—The plaintiff suffered injuries while in the employ of defendant in a zinc concentrating mill. He recovered judgment therefor in the trial court. It appears that plaintiff and a man named Stumbo were fellow-servants in defendant's employ under the immediate charge and direction of a foreman named Carmiday. In the mill there was a perpendicular shaft or passageway three feet in width and seventy-five feet high, inside of which was a ladder made by nailing strips one foot apart onto perpendicular studding, which ran up the side of the shaft. In this shaft, an elevator belt with cups attached at certain distances apart revolved over pulleys by means of which water and refuse rock were carried to the top and there dumped into a trough and thence onto a dump pile outside of the mill. This elevator belt was about one hundred and fifty feet long, was made of rubber and was large and heavy, weighing about one and one-half pounds to the foot. It was operated by a drive-belt revolving over a pulley, which was

reached by the ladder referred to. On the day of plaintiff's injury, the elevator belt had broken and the mill was stopped in operation till it could be repaired. Plaintiff was directed by Carmiday to get a rope there at hand with which to carry the belt up to the top of the shaft. This rope was an inch in diameter and about five feet long and was called a "sling rope." Plaintiff procured the rope and attached it to the end of the belt by tying the ends together and looping it over the belt near the end, and prepared to carry it up the ladder by putting the loop of the rope over his shoulder, when Carmiday told him that that was the end he wanted to repair, whereupon plaintiff put it down and slipped the rope off of the belt and handed it to Stumbo to put on the other end, while he, in compliance with Carmiday's request, went after some belt hooks. On his return, Stumbo had put the rope over his shoulder and was part way up the ladder. Carmiday then directed plaintiff to assist Stumbo; which he did by going up the ladder between twenty and thirty feet and easing the weight of the belt for Stumbo by raising it. As Stumbo got to the top, plaintiff called out to him to "let's rest a minute." In response to this, Stumbo took the rope off his shoulder and hung it over the end of the shaft. The heavy belt then slipped out of the rope, or, as expressed by some of the witnesses, the rope slipped off of the belt and the belt fell to the bottom, striking plaintiff in its fall, knocking him off the ladder to the bottom below, breaking both his legs and otherwise injuring him. The foregoing is merely a synopsis of the evidence taken partly from the testimony given by plaintiff and partly by Stumbo. It is sufficiently full and correct to an understanding of our view of the law of the case.

The ground, upon which plaintiff puts his action, is that defendant failed to furnish a reasonably safe appliance with which to work, in that the rope was not reasonably safe. There was evidence tending to show that the rope was stiff and wet, and that a better rope

—one better adapted to carrying up the elevator belt—
was one called a "hand line" that would reach to the
bottom of the shaft so that a person could stand at the
top of the ladder and draw the belt up. There was evi-
dence tending to prove that the sling rope used by plain-
tiff was not a reasonably safe appliance and there was
also evidence tending to show that it was.

The court gave instructions to the jury, at the in-
stance of plaintiff, whereby it was made the absolute
duty of defendant to furnish plaintiff a reasonably safe
appliance. This was error. It is a common expression
with courts, in the course of an opinion, that the master
must furnish the servant with reasonably safe appli-
ances. But statements of general law are frequently
inappropriate and misleading when applied practically
to facts in an instruction. The master can only be re-
quired to use ordinary care that the appliance which
he furnishes the servant is reasonably safe. [Bohn v.
Railway, 106 Mo. 429; Friel v. Railway, 115 Mo. 503;
Bradley v. Railway, 138 Mo. 307.] It was so ruled by
this court in an opinion by BROADDUS, P. J., in Knight
v. Sadtler Lead Co., 91 Mo. App. 574. The instructions,
as framed, made defendant an insurer that the appliance
was reasonably safe, without regard to his negligence
in that regard. We said of a similar question, that the
master "does not insure the safety of the place to work,
but he does insure that he will not be negligent in his
effort to have it safe." [Zellars v. Missouri Light Co.,
92 Mo. App. 123, 124.]

Instruction numbered 3, offered by defendant,
should have been given; there was evidence to sustain it
and it presented somewhat in detail hypothesis of facts
which, if believed by the jury, ought to have required a
verdict for defendant. So instruction numbered 4, of-
fered and refused for defendant, with a slight modifica-
tion, should be given. At its close, instead of the words
"be dangerous," there should be substituted the words,
"not reasonably safe." Instruction numbered 2 was

properly refused, as no issue was presented on the safety of the ladder by plaintiff's instructions. So also was the demurrer properly refused.

The judgment is reversed and the cause remanded. All concur.