PAUCK, Appellant, v. ST. LOUIS DRESSED BEEF & PROVISION COMPANY.

In Banc, January 25, 1901.*

1. **Practice:** DEMURRER TO EVIDENCE. In passing upon a demurrer to the evidence, every reasonable deduction to be drawn therefrom which tends to sustain the cause of action set forth in the petitioin, should be considered as absolutely true.

2. **Negligence:** DEFECTIVE MACHINERY: ASSUMPTION OF RISK: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. The accident which resulted in plaintiff's injury was due to loose and defective machinery, and plaintiff knew for weeks beforehand, and defendant also knew, or by the exercise of ordinary care might have known, of its dangerous condition. *Held*, that plaintiff did not assume the risk inci-

---

* NOTE.—Decided in Division Two, March 20, 1900.  Transferred to Court in Banc, and divisional opinion adopted, January 25, 1901.

dent to the use of such machinery, and whether or not he was guilty of such contributory negligence, in remaining in defendant's employ after knowing of the machinery's defective and dangerous condition, as would debar him from recovering, was, under the circumstances, a question of fact to be submitted to the jury, and, therefore, the court erred in sustaining a demurrer to the evidence.

Appeal from the St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

Reversed and remanded.

*Taylor & Taylor* and *Johnson, Houts, Marlatt & Hawes* for appellant.

(1) Plaintiff's right of action was not, as a matter of law, barred by any "assumption of risk" on his part by reason of his having remained in the employ of the defendant after he had some reason to know that the switching apparatus was defective, especially in view of the repairs made by the master; and the question of his contributory negligence in so doing was, under the circumstances in this case, for the jury to determine. This is the point upon which this case turns. (a) The danger was from defective appliances. It was not therefore one naturally incident to plaintiff's employment, and was not assumed by plaintiff when he entered the employment. Henry v. Railroad, 109 Mo. 493; Nicholls v. Glass Co., 126 Mo. 66; Bender v. Railroad, 137 Mo. 250. (b) The contention that plaintiff "assumed" the risk of danger from these defective appliances, must rest either upon (1) a contract to assume the risk, or (2) by reason of the application of the maxim *"volenti non fit injuria."* (2) There can be no contractual assumption of risk by the servant of danger arising from the negligence of the master in providing

unsafe or defective applicances. Blanton v. Dold, 109 Mo. 75; Settle v. Railroad, 127 Mo. 343; Railroad v. Norment, 84 Va. 167; 1 Bailey on Personal Injuries, par. 469; Reporters Note, 49 L. R. A. l. c. 62. The law should not and will not, on the ground of public policy, permit or uphold such a contract. Settle v. Railroad, 127 Mo. 343; Blanton v. Dold, 109 Mo., *supra;* Roesner v. Hermann, 10 Biss. 486; Railroad v. Spangler, 44 Ohio St. 471; Railroad v. Eubanks, 44 Ark. 460; Railroad v. Jones, 2 Head (Tenn.), 517; Railroad v. Orr, 91 Ala. 554; Hissong v. Railroad, 91 Ala. 514; Coal Co. v. Peterson, 39 Ill. App. 514. Railroads are not allowed to contract against their negligence. Why should employees be allowed to make such contracts? Beach on Modern Law of Contract, 1502; Kellerman v. Railroad, 34 S. W. 41. (3) If the maxim of *"volenti non fit injuria"* is sought to be applied, it is a question of fact, whether the plaintiff fully understood and appreciated his danger; and further whether he was *volens.* Continuance in service, with knowledge of the danger, can not, as a matter of law (except in the clearest cases) establish the *volens* and defeat recovery. The question is a question of fact for the jury. Fitzgerald v. Paper Co., 155 Mass. 156; Mahoney v. Dore, 155 Mass. 513; Smith v. Baker, 60 L. J., Q. B. D. 689; Williams v. Birmingham, 68 L. J., Q. B. D. 920; Sword v. Cannon, 1 Sessions Cases (2d series), 499; Yarmouth v. France, 57 L. J., Q. B. D. 7 loc. cit. 11; Brooke v. Ramsden, 63 L. T. (N. S.), 287; Osborne v. Railroad, 57 L. J., Q. B. (N. S.), 618. (4) The question is whether continuing in service after knowledge of danger from defective appliances will defeat plaintiff's action —under the Missouri decisions; and, in reason, is properly a question of contributory negligence: and is a question of fact for the jury under all the circumstances. Blanton v. Dold, *supra;* Settle v. Railroad, 127 Mo. 343; Hamilton v. Mining

Co., 108 Mo. 376; O'Mellia v. Railroad, 115 Mo. 205; Huhn v. Railroad, 92 Mo. 440; Thorpe v. Railroad, 89 Mo. 660; Patterson v. Railroad, 76 Pa. St. 389; Snow v. Railroad, 8 Allen (Mass.), 441; Dwyer v. Railroad, 52 Fed. Rep. 89; Martin v. Railroad, 94 Cal. 331; Shearman & Redfield on Negligence (5 Ed.), par. 211; Railroad v. Mares, 123 U. S. 710; Epperson v. Telegraph Co., 155 Mo. 335; Bailey on Personal Injuries, 469, 470; Reporters Note, 49 L. R. A. 33, loc. cit. 62; Clark v. Holmes, 7 H. & N. 944.    (5)    Plaintiff's knowledge of the defective appliance would not defeat his recovery if it was not so glaring as to threaten immediate injury, or if he might have reasonably supposed that he could safely work about it by the use of care and caution.    The court can not declare as a matter of law, that the plaintiff was contributorily negligent unless the defect was so manifestly and glaringly hazardous that no prudent man of the same class would remain in the service.    Huhn v. Railroad, 92 Mo. 440; Hamilton v. Mining Co., 108 Mo. 376; Stoddard v. Railroad, 65 Mo. 514; Devlin v. Railroad, 87 Mo. 545; Snow v. Railroad, 8 Allen (Mass.), 441; Patterson v. Railroad, 76 Pa. St. 389; Smedley v. Railroad, 118 Mo. 278; Mahaney v. Railroad, 108 Mo. 191; O'Mellia v. Railroad, 115 Mo. 221; Railroad v. Mares, 123 U. S. 710; Epperson v. Telegraph Co., 155 Mo. 335.

*O'Neill Ryan* for respondent.

(1)    This was an action based on negligence, the charge being that the master knowingly furnished defective appliances to the servant.    The petition failed to state a cause of action in this—it failed to allege that the danger and defect were not known to the plaintiff.    It was therefore fatally defective and the demurrer was properly sustained.    Epperson v. Telegraph Co., 155 Mo. 352; Bogenschutz v. Smith, 8 Ky.

L. R. 379; Railroad v. Jackson's Adm., 85 W. Va. 497. (2) The plaintiff's evidence showed that there was no change in the condition, which was obvious, of the apparatus from the time he began work until he was hurt; that he, a man of mature years, knew from the start its condition; that he was aware all the time of the risk of such an accident as occurred, and he continued at the work without complaint and without any assurance that the conditions would be changed. In these circumstances he assumed the risk, and can not now complain of the injury resulting. Price v. Railroad, 77 Mo. 511; Alcorn v. Railroad, 108 Mo. 97; Junior v. M., E. & P. Co., 127 Mo. 83; Lucy v. Oil Co., 129 Mo. 39; Nugent v. Milling Co., 131 Mo. 254; Doyle v. Trust Co., 140 Mo. 18; Epperson v. Telegraph Co., 155 Mo. 346; Pierce v. Clavin, 82 Fed. Rep. 550; Craig v. The Saratoga, 87 Fed. Rep. 319; Hunt v. Kile,, 98 Fed. Rep. 53; Patnode v. Harter, 20 Nev. 303; McGlynn v. Brodie, 31 Cal. 376; Railroad v. Jackson's Adm., 85 W. Va. 489; Bogenschutz v. Smith, 8 Ky. L. R. 376; Bell v. Railroad, 70 Ga. 566; Jenny v. Murphy, 115 Ind. 566; Marsh v. Chickering, 101 N. Y. 396; Powers v. Railroad, 98 N. Y. 274; Windover v. Troy, etc., Co., 4 App. Div. N. Y. 202; Graves v. Brewer, 4 App. Div. N. Y. 327; Pingree v. Leyland, 135 Mass. 398; Taylor v. Carew Mfg. Co., 140 Mass. 150; O'Malley v. S. B. G. L. Co., 158 Mass. 135; Disano v. N. E. S. B. Co., 40 Atl. Rep. (R. I.), 7; McDonald's Adm. v. N. & W. R. Co., 27 S. E. Rep. (Va.), 821; Bailey on Personal Injuries, secs. 509, 510,778; Beach on Cont. Neg., sec. 371; Wood on Master and Servant, p. 791; 2 Thompson on Negligence, p. 1008. (3) The evidence showed that plaintiff having pushed one half-beef from the side to the main rail, proceeded to push another over, without looking to see if the first, in going over, had not loosened the switch (as he knew it often did), the effect of which would be, as he knew,

to cause the next half-beef pushed over to fall. Knowing the condition and the risk, he neglected to look, pushed the next half-beef, it fell and he was hurt. His own negligence having thus directly contributed to the accident, he can not recover, and it was the duty of the trial court to direct a nonsuit; and this although the evidence may have shown negligence on the part of the defendant. Lenix v. Railroad, 76 Mo. 91; Powell v. Railroad, 76 Mo. 83; Butts v. Railroad, 88 Mo. 272; Weber v. Railroad, 100 Mo. 200; O'Donnell v. Patton, 117 Mo. 21; Hogan v. Railroad, 150 Mo. 55; Holwerson v. Railroad, 57 S. W. 770; Bemisch v. Roberts, 143 Pa. St. 1; Rietman v. Stolte, 120 Ind. 314; Beach on Cont. Neg. 58.

BURGESS, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff while in the service of defendant as laborer, because of its negligence in not furnishing him reasonably safe appliances used by him in and about his work.

The defenses were contributory negligence on the part of plaintiff, and the assumption of the risk by him.

At the time of the accident defendant was the owner and operator of a large beef slaughtering and packing establishment in the city of St. Louis.

On the main floor was a room about eighty feet long from north to south and about sixty feet wide from east to west. At the north end of this room the beeves, having been first slaughtered, stripped and halved, were suspended on side rails that ran, at about fifteen feet above the floor, due south about thirty-two feet, where they curved a few feet to the west and made connection, by switches, with the main rail running east and west which passed over a scale near the west side of the room where the beeves were weighed, and then curved to the south side of the room, ran some distance close to the south

wall and then curved south into cooling rooms. There were twelve of these side rails, or six pairs, each rail being about five feet from the adjoining rail, the extreme west one being near the scale, which was at the west side of the room. Each rail was about two inches wide, flat on top, except for a ridge which ran the length of the rail in the center. The shackle as it was called, rested on a wheel which fitted and ran along on this ridge and connected with the shackle, but suspended below the rail was a hook to which the half-beef was attached. There was attached to the ceiling girders (to which the rails, which stretched a short distance below, were secured) at each point where the said rails were to connect with the main rail, a simple mechanical device, consisting of a slot and wheel, from which were suspended two ropes. By pulling one the wheel moved in one direction and the side rail was switched a few inches and connected with the main rail, and the half-beeves could be run on to the rail to the scale, and thence around to the cooling rooms. By pulling the other rope the side rail was disconnected from the main rail and switched back a few inches to the starting point, thus leaving an open switch. If a half-beef were then pushed along the side rail, it would run off unless the side rail was again switched back to the main rail. These ropes hung within easy reaching distance of a person standing on the floor. They usually ran the beeves along alternate side rails, but aimed to get the two halves of the same beef together at the scale and into the cooling room. The average daily number of half-beeves pushed over these rails was two hundred and fifty.

Plaintiff was a man aged about forty-two, and of the average shrewdness and intelligence of his class. He had worked in this room pushing the beeves for about three weeks just prior to the accident and had learned to do his work in a day. It was work easily learned and required simply main

strength to push the beeves and a little care in opening and closing the switches. The method followed by the workman was to put his left shoulder to the beef after it had been hung to the shackle, and in this attitude push it along the side rail, and after getting a number together he would connect the side rail with the main rail by pulling the rope, and then push the beeves one after the other on to that main rail and on to the scale, and thence to the cooling room. Sometimes plaintiff would weigh the beef but usually a man stood at the scale for that purpose. Some half-beeves had jumped or fallen off, before this accident while plaintiff was pushing, but plaintiff could not tell how many; he claimed the switches would not throw the whole way, and Gain Roettling (the weigher) would tighten them. Asked if he could see if the switch made connection, he said, "If I had looked over them to see how the switch was, but if I ran one beef over, then the second beef ought to go over."

"If the switch was open, the wheel would not go over? No."

He remembered throwing three off—one falling in the cooler—though he claimed the switches were fixed twice a week, or every other day. Plaintiff would hold the ladder for Gain Roettling and would see what the latter did in fixing the switches; namely, to make them connect closely with the main rail; and he knew all the time, when the switch rails did not connect closely with the main rail, that there was danger of the wheel running off and dropping the beef down on him. Plaintiff had thrown the switch and connected the side rail with the main rail and had pushed one beef over and, when he was hurt, was pushing another beef over this same rail, using his shoulder and looking straight ahead, with his head slightly downward, and not looking at the rail, assuming that, as he had pushed one beef over all right, the one he was then push-

ing would go over also.   The shackle and beef all fell upon him.

Plaintiff never complained to any of his superiors in his employment of the unsafe condition of the rails and switches, which had been for three or four months before the accident continuously in the same condition, as when it occurred.   Defendant knew of the condition of the switches and rails for several weeks before the accident.

At the close of plaintiff's evidence the court, at the instance of defendant, instructed the jury, that under the pleadings and evidence the plaintiff was not entitled to recover. Upon the giving of this instruction plaintiff took a nonsuit with leave to move to set the same aside.   And after having filed his motion to set aside the nonsuit, and for a new trial, and the same being overruled, plaintiff appeals.

In passing upon the action of the court in sustaining the demurrer to the evidence, the evidence and every reasonable deduction to be drawn therefrom which tended to sustain the cause of action set forth in the petition, must be considered as absolutely true, for such was the effect of the demurrer.

The evidence clearly showed that the switches connecting the slide or switch rails with the main rails, were loose and shaky, and would get out of position by shaking the beeves, and that the condition of the appliances was known to defendant company; or at any rate on account of its long ·continuance, by reasonable care and a due regard for the safety of its employees, it might have known of it in time to have made the necessary repairs to have prevented the accident.   That the accident was the result of the loose and defective condition of the appliances is equally clear, so that, the question to be considered is, whether or not plaintiff assumed the risk to be apprehended from the defective condition of the appliances which caused the accident.

While it is the duty of the master to furnish his servant a reasonably safe place to work, yet if he fails to do so, and the servant remains in his service in the face of obvious dangers, he assumes the risk, and if he is injured by reason thereof the law affords him no redress. And while the law imposes the duty upon the master of furnishing his servant a reasonably safe place to work, and the servant has the right to rely upon the performance of that duty by him and is not required to search for dangers not apparent to him he has no right to close his eyes to obvious danger, and then hold his master responsible in damages for injuries received by him by reason of such danger.

So, when the master knowingly, or might know by the exercise of ordinary care, furnishes to an inexperienced servant, or to one who has no knowledge of their condition, tools, implements or appliances with which to work which are not reasonably safe for the purpose for which they are to be used, and injury occur to the servant by reason thereof without fault or negligence upon the part of the servant, the master will be held liable in damages for such injury.

But in the case at bar both plaintiff and defendant knew for weeks before the accident of the dangerous condition of the appliances which caused the injury, and the question is whether or not plaintiff assumed the risk by remaining in the service of the company after he became aware of that fact, there being no promise to repair the defect, or anything of that sort.

The danger being from defective appliances was not one naturally incident to plaintiff's employment, and therefore was not assumed by plaintiff when he *entered* defendant's service. [Henry v. Railway, 109 Mo. 488; Nicholds v. Glass Co., 126 Mo. 55.] But defendant contends that he assumed the risk by remaining in the service of the company after he became

aware of the dangerous condition of the appliances in the absence of a promise by defendant to repair.

In 1 Bailey's Personal Injuries, sec. 469, relating to master and servant, there is quoted with approval the following from Settle v. St. Louis, and S. F. R. R. Co., 127 Mo. 336: "The rule is too well settled in this State to require the citation of cases, that a person when he enters the service of another assumes all the risks and dangers usually incident to the employment in which he engages; but the rule is equally well settled that the employer is charged with the duty of not subjecting his servant to risks by his own negligence, and the servant does not assume the risk of dangers arising from his neglect. It is claimed that though the duty to repair defects is neglected by the master, if the servant is advised of it and thereafter elects to continue in the service and to use the defective means, he thereby assumes the risk of injury therefrom. The rule thus invoked would relieve the master of his duty as soon as the servant became aware of its violation. Such is not the law of this State. The duty to repair is a continuing one, and a failure to discharge it is negligence, though the servant may continue in the service after knowledge thereof. An express contract will not relieve him. The question has often been raised, discussed and decided whether a servant can recover for injuries in the use of machinery or appliances known by him to be defective. The non-liability of the master in such cases, however, is properly placed upon the ground of contributory negligence rather than that of assumption of risk. The question is one of contributory negligence, which should be submitted to the jury, unless the defect is so glaringly hazardous that the court could declare, as matter of law, that a person of ordinary prudence would not use it."

It would seem to follow from what has been said that plaintiff did not assume the risk. Plaintiff therefore contends

that the question whether continuing in the service of defend-
ant after knowledge of the danger to be apprehended from the
defective appliances, will defeat his recovery was a question
of contributory negligence, and should have been submitted to
the jury.    There can be no question as to defendant's knowl-
edge of the defective condition of the appliances for several
weeks before the accident.    The company was therefore guilty
of negligence in failing to remedy the defect.    These facts to-
gether with others in evidence, which the demurrer to the evi-
dence confessed to be true, entitled the plaintiff to recover, un-
less they showed that he was guilty of negligence contributing
directly to his injury.    If the defect in the appliances was so
glaring that a man of common prudence would not have used
them, plaintiff was not entitled to recover.    [Huhn v. Rail-
road, 92 Mo. 447; O'Mellia v. Railroad, 115 Mo. 205, and
authorities cited; Swadley v. Railroad, 118 Mo. 268.]

"If the instrumentality by which he is required to per-
form his service, is so obviously and immediately dangerous,
that a man of common prudence would refuse to use it, the
master can not be held liable for the resulting damage.    In
such case the law adjudges the servant guilty of concurrent
negligence."    [Patterson v. Railroad, 76 Pa. St. 389.]

"There may be cases where a servant would be wanting
in due care by his incurring risk of injury in the use of de-
fective or imperfect machinery or apparatus, after he knew
it might cause him bodily harm."    [Snow v. Railroad, 8 Al-
len, 441.]

We do not think under the facts disclosed by the record
that the defect was so manifestly dangerous, as to justify the
court in holding as a matter of law, that a person of ordinary
prudence would not have used the appliances.    It was only in
such circumstances that it would have been justified in so do-
ing.    Although plaintiff knew of the defective condition of the

appliances, he was not for that reason bound to quit the service of defendant, unless the danger was so glaring, that a person of ordinary prudence would not have used them, but was required to exercise care and caution in their use, commensurate with apparent danger, and these, under the evidence, were questions for the consideration of the jury.

The judgment is reversed and the cause remanded.

*Gantt, P. J.,* concurs; *Sherwood, J.,* absent.

## In Banc.

PER CURIAM.—The foregoing opinion filed by *Burgess, J.,* in this cause while it was pending in Division Two, of the court, is approved and adopted as the opinion of the court in banc, by a majority of our number. *Gantt, Valliant, Marshall* and *Brace, JJ.,* concurring in said opinion; *Sherwood, J.,* dissenting.