GEORGE BENNETT, Respondent, v. CRYSTAL CAR-BONATE LIME COMPANY, Appellant.

St. Louis Court of Appeals, January 18, 1910.

1. MASTER AND SERVANT: Injury to Servant: Safe Place to Work: Master Directing Movements of Servant. In an action against the master by a servant for personal injuries, although, under the circumstances of the case, the rule requiring the master to exercise ordinary care to furnish the servant a safe place to work does not obtain, yet if the master retained control of the servant and directed his movements in and about the work, a peremptory instruction for defendant should not be given.

2. ———: ———: ———: Servant's Work Consists in Making Place Unsafe. Where the place in and of itself is reasonably safe, and the particular work being prosecuted itself makes the place unsafe, the rule requiring the master to furnish the servant a reasonably safe place to work does not obtain; and this exception is especially pertinent where the dangers are transitory and passing only, and inhere rather in the manner in which the work is being prosecuted than in the place itself.

3. ———: ———: ———: Servant Performing Work in Own Way. Where a servant is injured as a result of a transitory peril which inheres in the work he is performing according to his own discretion, without a pointed direction or other specific negligence on the part of the master, it is frequently declared the rule requiring a reasonably safe place does not obtain.

4. ———: ———: ———. As a general rule, it is the duty of the master to exercise ordinary care to furnish the servant with a place as reasonably safe to perform his labor as the character of the work, considering its hazards, will permit.

5. ———: ———: ———: Making Place Unsafe: Master Directing Movements of Servant: Negligence, Assumption of Risk and Contributory Negligence for Jury: Facts Stated. Where a servant in a stone quarry, at the urgent command of the foreman, undertook to pry a particular stone out of a large mass of stone shattered by blasting, in doing which another stone, which had been held in position by the one he was removing, rolled out and injured him, and the foreman, by exercising ordinary care, could have foreseen the probable result of his order, which was not obvious to the servant, a case of the master negligently directing the servant to render a reasonably safe place unsafe and not a question of the servant himself rendering a safe place unsafe, is presented. And, under the facts stated, the questions of the master's negligence, the servant's contributory negligence and his assumption of the risk are for the jury.

6. ———: ———: Contributory Negligence. A servant may not be declared negligent as a matter of law, unless the dangers incident to the act were so threatening and imminent as to portray obvious peril. If it appeared he might safely perform the act, by exercising care on his part, the question of his contributory negligence is for the jury.

7. ———: ———: Assumption of Risk. Generally speaking, a servant does not assume risks arising from the master's negligence, however obvious.

8. ———: ———: ———. A servant must obey the reasonable orders of the master, and, where he is directed to perform

a task which apparently he may safely do without injury to himself, he does not as a matter of law assume the risk, especially where the order is given in an urgent manner and the servant is not given an opportunity to reflect, for in assumption of the risk there must be present the element of assent, express or implied.

9. ———: ———: Safe Place to Work: Ordinary Care Only Required: Instructions. In an action by a servant against the master for personal injuries, an instruction which charged the jury it was the master's duty to furnish the servant a "safe place to work" was erroneous, it being the master's duty merely to exercise ordinary care to furnish a place as reasonably safe as the character of the work being prosecuted would permit.

10. INSTRUCTIONS: Presenting Theory Not Warranted by the Proof. An instruction which predicates liability on a hypothesis not presented by the proof is erroneous.

11. MASTER AND SERVANT: Injury to Servant: Contributory Negligence: Danger Glaring: Instructions. Where the danger to a servant is threatening, glaring and apparent, the court may determine as a matter of law his contributory negligence, but a jury may acquit the defendant on the ground of contributory negligence where nothing more appears than that plaintiff encountered a risk which a person of ordinary prudence would have avoided, so that an instruction which requires a finding of freedom from contributory negligence unless the conditions around plaintiff were "such as to threaten such glaring, apparent, and immediate danger that a person of ordinary care and prudence would have refused to work" under the circumstances was erroneous.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED AND REMANDED.

*McKeighan & Watts* and *Wm. R. Gentry* for appellant.

(1) The court erred in overruling the demurrer to the evidence, because: (a) No negligence on the part of defendant was shown; (b) The injury to plaintiff happened by reason of risks assumed by plaintiff in his contract of employment. Clark v. Liston, 54

Ill. App. 578; Mining Co. v. Parrish, 74 Ill. App. 559; Allen v. Logan City, 10 Utah 279; Griffin v. Railroad, 124 Ind. 326; Swanson v. Lafayette, 134 Ind. 625; Swanson v. Railroad, 68 Minn. 184; Railroad v. Spillman, 34 S. W. 298; Armour v. Hahn, 111 U. S. 313; Ziegenmeyer v. Lime and Cement Co., 113 Mo. App. 330; (c) The injury, according to plaintiff's story was the result of an occurrence which could not have been foreseen by either plaintiff or defendant; and therefore it was a mere accident, for which plaintiff is not entitled to recover. (2) The court erred in giving improper instructions. (a) Instruction p 1, given for plaintiff, is wrong. (b) Instruction p 5, given for plaintiff, is wrong.

*Dudley & Palmer* for respondent.

(1) There was abundant evidence to take the case to the jury. Both specifications of negligence set up in the petition were proven; proof of either was sufficient. Montgomery v. Railroad, 181 Mo. 508; Wacher v. Transit Co., 108 Mo. App. 645; Holden v. Railroad, 108 Mo. App. 665. A strong inference of negligence arose from the proof in which case it was for the jury to decide. Fogarty v. Transfer Co., 180 Mo. 490; Kielty v. Construction Co., 121 Mo. App. 58; Bane v. Irwin, 172 Mo. 306; Bloomfield v. Construction Co., 118 Mo. App. 254; Adolff v. Pretzel & Baking Co., 100 Mo. App. 212; Baird v. Railroad, 146 Mo. 265. (2) Plaintiff's injury was no accident. Rogers v. Printing Co., 103 Mo. App. 683; Dean v. Railroad, 199 Mo. 386. (3) Plaintiff's first instruction was properly given. Bradley v. Railroad, 138 Mo. 293; Stumbo v. Zinc Co., 100 Mo. App. 635; Kielty v. Construction Co., 121 Mo. App. 67; Knight v. Lead and Zinc Co., 91 Mo. App. 579; Copeland v. Railroad, 175 Mo. 650; Burdoin v. Trenton, 116 Mo. 358; Kennedy v. Transit, Co., 103 Mo. App. 1. (4) Plaintiff's instruction number 5 was properly

given. It was supported by abundant evidence and has often met the approval of the courts. Holmes v. Brandenburg, 172 Mo. 65; Fogus v. Railroad, 50 Mo. App. 250; Beard v. Car Co., 63 Mo. App. 382; Blundel v. Mfg. Co., 189 Mo. 552, par. 1.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of the defendant. The plaintiff recovered and defendant appeals.

While in defendant's employ and engaged as a laborer in its stone quarry, plaintiff was seriously injured as a result of a large stone rolling upon his limb. It appears that while he was engaged under the immediate direction of his foreman, in prying a particular stone out of a large mass, another stone, which had theretofore been held in position by the one which plaintiff sought to remove, was thereby precipitated forward and occasioned his injury. The evidence tends to prove, too, that the act in which plaintiff was engaged at the time did not threaten immediate peril although the result might have been foreseen by the foreman who directed the work.

To a complete understanding of the case, it will be necessary to state the facts somewhat extensively. Defendant owns and operates a stone quarry in a bluff on the Missouri River in Lincoln county. The quarry faces toward the east and has been worked from the top of the bluff to a point near or about the level of the river bank. The depth of the quarry is about fifty feet. After the stone is quarried, it is reduced to small parcels, to the end of running it through a crushing machine. The work of reducing the stone to small particles is done by the laborers with sledge hammers and this is the work for which plaintiff was employed, although he assisted otherwise about the quarry as well. Through the means of explosives, defendant had separated from the ledge of rock in the bluff a portion

thereof, say forty or fifty feet in length, about six or seven feet in width and probably the same in depth. This mass of stone, the larger portion of which had been shattered by the blasting, lay upon the floor of the quarry and the laborers had been engaged for several days in reducing the same and clearing it up for the crusher. It seems the entire mass had been cleared up and disposed of except a portion in the northwest corner of the quarry which is described to be about twelve feet in length, seven feet in width and six feet in height. This particular portion of the stone had been severed from the ledge in a solid mass. That is to say, although other portions had been considerably crushed and crumbled as a result of the heavy blast, the portion referred to was lifted bodily from its place in the bluff without being dissevered into fragments. Such, we infer, was a frequent occurrence in the quarry, for it appears to have been the custom in vogue, when the heavy charges of dynamite failed to crumble the rock, large portions like this one were drilled and blasted a second time by what is known as "pop shots," that is, lesser blasts.

A day or two before his injury, the plaintiff had assisted another employee in thus drilling and blasting the portion of stone referred to. What is known as "pop shots" were exploded therein and the mass of stone twelve feet long, seven feet wide and six feet deep was shattered, to the end that it might be reduced for the crusher. It seems that although this body of stone was cracked and shattered by the "pop shots" referred to, it remained standing as before. That is to say, it was not scattered over the floor of the quarry but remained in position, shattered and cracked throughout. The plaintiff and other laborers, about a dozen in all, having completed the task of clearing up the floor of the quarry, approached this body of stone with the purpose of dismembering and reducing it. The plaintiff laid aside a shovel with which he had been working and

took up a crowbar for the purpose of prying out por-
tions of the blasted stone which were parcel of the
huge mass before him.  He hesitated for a moment, as
he said to "hunt it," that is,  as we understand it, he
hesitated with a view to looking out a proper place to
commence the work.

The men engaged at the quarry each bear a number
by which, instead of by name, they were addressed by the
foreman.   The plaintiff's number was twelve and the
foreman usually so addressed him.  Plaintiff says while
he was standing with the crowbar in his hand and view-
ing the mass of stone or "hunting it," the foreman said,
"Twelve, bar out that rock," indicating a particular
stone near the corner of the body and about two feet
above the floor of the quarry; that he hesitated an in-
stant longer to make an examination and the foreman
repeated, "Twelve, I tell you to bar out that rock under
that one there," whereupon he inserted the crowbar and
lifted the stone from its position.  Upon the stone which
he lifted with his bar receding before the lift, another
one supported by it rolled out of the mass upon his leg
and inflicted the injury.  In this connection plaintiff
says that the foreman was standing to the side and in
the rear on a slight elevation in a position to see the
danger incident to barring out the stone referred to.
Plaintiff says from the position in which he himself
stood, at the time he was ordered to remove the partic-
ular rock and while engaged in the act, it was im-
possible for him to discover the likelihood of the three
cornered stone above and slightly in the rear of the
one he removed being precipitated forward upon him,
and that the foreman could have seen it from the po-
sition he occupied at the time the order was given.

At the conclusion of the testimony on the part of
the plaintiff, the defendant requested the court to per-
emptorily direct a verdict for it.  This request having
been denied, the defendant introduced no evidence
whatever on its part, contenting itself to stand on the

proposition that plaintiff had failed to make a prima-facie case.

It is argued here that the court should have directed a verdict for the defendant for the reason the testimony fails to disclose a breach of its obligation to exercise ordinary care to the end of furnishing the servant a reasonably safe place to work. Rather, the precise argument is, that in the circumstances of the case, the rule requiring the master to exercise ordinary care to the end of furnishing the servant a reasonably safe place to perform his labor does not obtain and that the plaintiff must be declared to have taken the risk, for the reason he received his injury from a peril ordinarily incident to the employment in which he was engaged. We are not persuaded by this argument on the facts in proof for the reason it appears the defendant retained control of the men and directed their movements in and about the work. This is especially true in this case for the reason it appears plaintiff received his injury while performing the very act which he was directed to perform by defendant's foreman in charge. It is no doubt true that there are cases where the rule requiring the master to furnish the servant a reasonably safe place does not obtain, such, for instance, as where the place in and of itself is reasonably safe and the particular work being prosecuted is one which renders it unsafe. The doctrine is frequently applied to cases where the servant is employed in dismanteling and tearing down a building or prosecuting a particularly hazardous work in a mine or about a quarry, or undermining an embankment. It seems to be especially pertinent in those instances where the dangers are transitory and passing only and inhere rather in the mode and manner in which the work is being prosecuted than in the place itself. And then, too, an element of nonliability frequently adverted to in such cases is the fact that the master has given the work entirely in the charge of the servant and permits him to perform it

in his own way. In such circumstances, if the servant is injured as a result of a transitory peril which inheres in the work for which he was employed and is prosecuting, according to his own discretion, without a pointed direction or other specific negligence on the part of the master, it is frequently declared that the rule requiring a reasonably safe place does not obtain or that the servant has assumed the risk as one ordinarily incident to the employment. [Henson v. Armour Pkg. Co., 113 Mo. App. 618, 88 S. W. 166; Armour v. Hahn, 111 U. S. 313; Bradley v. Chicago, Milwaukee, etc., Ry. Co., 138 Mo. 293, 39 S. W. 763; Bloomfield v. Worster Construction Co., 118 Mo. 254, 94 S. W. 304; Bradley v. Forbes Tea Co., 213 Mo. 320, 111 S. W. 919, Zeigenmeyer v. Goetz Lime, etc., Co., 113 Mo. App. 330, 88 S. W. 139; Rigsby v. Oil Well Sup. Co., 115 Mo. App. 297, 319, 91 S. W. 460.] However that may be, the rule which generally obtains in this State is, that it is the duty of the master to exercise ordinary care to the end of furnishing the servant with a place as reasonably safe to perform his labor as the character of the work, considering its hazards, will permit. [Bradley v. Chicago, Milwaukee, etc., R. R. Co., 138 Mo. 293, 39 S. W. 763; Livengood v. Joplin, etc., Lead & Zinc Co., 179 Mo. 229, 77 S. W. 1077; Kielty v. Construction Co., 121 Mo. App. 58, 97 S. W. 998; Keegan v. Kavanaugh, 62 Mo. 230.]

Now the precise question for decision does not relate alone to the fact that the plaintiff was engaged in rendering a place reasonably safe in itself to be an unsafe place, but it reveals the fact as well that the master ordered him to pry out a certain rock, the result of which might have been foreseen by the exercise of ordinary care on the part of the master, as fraught with probable peril to plaintiff and which danger appears not to have been obvious or patent to the plaintiff. Although the mass of stone had been shattered by the "pop shot" blast referred to, it stood intact and appears to have been reasonably safe in and of itself.

The danger involved, instead of residing in the place as it stood, rather inhered in the act of prying out and removing the particular stone on which rested another and precipitating it forward. It is true the act was performed by the plaintiff himself but it was at the urgent direction of the foreman, who, according to the testimony, could, by exercising ordinary care, have seen the probable result which was not obvious to the plaintiff. In this view, instead of the case presenting a question where the injured party himself renders a reasonably safe place to be an unsafe one, it presents instead the aspect of the master negligently directing and urging the servant to render a reasonably safe place an unsafe one to his injury and hurt. In such circumstances, even though the place is reasonably safe in itself, if the master negligently orders and directs the servant's act which renders it unsafe and occasions an injury a prima-facie liability arises on account of the negligent order, unless the dangers are so obvious and imminent as to preclude the right of recovery on the theory of contributory negligence, or it appears the risk is one assumed by the servant. In the circumstances stated the order of the master implies that the place is reasonably safe. [Keegan v. Kavanaugh, 62 Mo. 230; Bloomfield v. Worster Construction Co., 118 Mo. App. 254, 94 S. W. 304; Bane v. Irwin, 172 Mo. 306, 72 S. W. 522; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 319, 91 S. W. 460.]

According to the evidence, the plaintiff was unable to discover from the position he occupied the latent danger in removing the particular stone referred to and he says the defendant's foreman might have seen it, as he was standing at another part of the yard upon a slight elevation. This proof, together with the fact that the foreman repeated his order in rather emphatic terms to the plaintiff to remove the stone mentioned, tends to show negligence on the part of the defendant and that plaintiff was reasonably careful in the premises.

The plaintiff may not be declared negligent as a matter of law unless the dangers incident to the act were so threatening and imminent as to portray obvious peril. [Blundell v. Miller Mfg. Co., 189 Mo. 552, 88 S. W. 103; Garaci v. Hill-O'Meara Construction Co., 124 Mo. App. 709, 102 S. W. 594.]

If it appeared that he might safely perform the act directed by exercising care on his part, then the question of his contributory negligence is one for the jury. [Huhn v. Missouri Pacific Ry. Co., 92 Mo. 440, 447, 4 S. W. 937.] It may be, had the plaintiff performed the act voluntarily on his own account without being directed so to do by the foreman, that he should be declared to have taken the risk in so doing, but the negligent order to perform it under the circumstances given in evidence, removes the case from the category of assumed risks for the want of voluntary and free action of the mind on the subject.

Generally speaking, it is the law of this State as declared by the Supreme Court, that the servant no longer assumes the risks arising from the master's negligence, however obvious. [Dakan v. Chase, etc., 197 Mo. 238, 94 S. W. 944; Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Pauck v. St. Louis Dressed Beef, etc., Co., 159 Mo. 467, 61 S. W. 806.] Be this as it may, it is the duty of the servant to obey such reasonable orders as are given by the master, and when he is directed, as in this case, to perform a task which it appears he may safely do without injury to himself, it cannot be declared as a matter of law that he assumed the risk, especially is this true in the present instance where the order was repeated in an urgent manner and the plaintiff not given an opportunity to reflect. In every instance of assumption of risk, there must be present the element of assent thereto either express or implied, on the part of the servant. [Adolff v. Columbia Pretzel & Baking Co., 100 Mo. App. 199, 73 S. W. 321; Lee v. R. R., 112 Mo. App. 372, 87 S. W. 12.] The

question of defendant's negligence together with those of the plaintiff's contributory negligence and assumption of the risk were for the jury.

Notwithstanding the defendant's exception, the court gave, at the instance of the plaintiff, the following instruction which covered the whole case:

"The court instructs the jury that it was the duty of the defendant lime company to use all reasonable precautions to avoid exposing plaintiff to danger, and to use ordinary care and diligence to provide him a safe place to work, and if you believe from the evidence that a large body or ledge of stone in defendant's quarries had been broken and loosened from the natural walls of defendant's quarry by drilling and blasting the same, and that said ledge or body of stone had been permitted to stand and become insecure and dangerous on account of defendant's negligence, and liable to fall upon and injure plaintiff while working at a point below and near the base thereof, and that the defendant knew, or by the exercise of ordinary care and attention could have known, of the dangerous and unsafe condition of said ledge or body of stone; and if you believe from the evidence that the superintendent or foreman of the defendant lime company, having power and authority to manage and control plaintiff and the men working in said quarry, and direct them as to the place and manner of performing their work, ordered the plaintiff into said position of danger, and directed the plaintiff to do the work at which he was engaged at the time he was injured, and that the plaintiff, in reliance on said order and in obedience thereto, undertook and engaged in said work at the place and in the manner directed by said foreman, and that while plaintiff was so engaged in said work a portion of said ledge or body of broken and loosened stone fell upon and injured the plaintiff, then the plaintiff is entitled to recover in this cause; unless you further believe and find from the evidence that the condition of said ledge

or body of stone below which plaintiff was so working was such as to threaten such glaring, apparent and immediate danger that a person of ordinary care and prudence would have refused to work around it under the circumstances."

The instruction is faulty and susceptible to criticism in several respects. In the first place, it informs the jury that it was defendant's duty to furnish the plaintiff "a safe place to work." This is not the law. Even on the theory of the case attempted to be incorporated in the instruction, the defendant discharged its duty in that behalf if it exercised ordinary care to the end of furnishing the plaintiff a place as reasonably safe as the character of the work to be prosecuted would permit. However, if other portions of the instruction clearly defined the obligation, this of itself might not constitute reversible error. Bradley v. Chicago, Milwaukee, etc., R. R. Co., 138 Mo. 293, 39 S. W. 763, is a case in point. A leading error in the instruction is that it predicates a liability on a hypothesis of fact that is not presented by the proof. It will be observed that the instruction informs the jury in substance that if it believed defendant had broken a large body of stone and permitted the same to stand and become insecure and dangerous on account of defendant's negligence and liable to fall upon the plaintiff while working thereabout and defendant knew, or by the exercise of ordinary care could have known, of the dangerous and unsafe condition of such body of stone, and the foreman directed plaintiff into a position of danger to do the work on which he was engaged, etc., then under other circumstances recited therein the finding might be for the plaintiff. The proof wholly fails to support the theory of the instruction and on which, together with the order of the foreman, it seems to predicate liability, that is, that defendant had negligently permitted a large body of stone to stand and become insecure and danger-

146 App.—37

ous. The fact is the body of stone referred to stood intact as it had been blasted and appeared to present no dangers whatever. The entire danger in the situation resulted from the fact that plaintiff removed one stone, which permitted another to fall upon him. The element of liability presented by the proof is that the foreman ordered the plaintiff to perform this act when by exercising care he could have foreseen the probable result which plaintiff said he was unable to foresee from his position. However, before the plaintiff is entitled to recover on this score, it is incumbent on the jury to find that the foreman knew, or by exercising ordinary care might have known, that the removal of the stone he directed to be removed, would occasion another one to fall and likely injure plaintiff. There is not a word in the instruction under review requiring the jury to find that defendant's foreman either knew, or by exercising ordinary care might have known, this fact. It is true the instruction requires a finding to the effect that the defendant knew the body of stone had become insecure and dangerous on account of defendant's negligence and liable to fall upon and injure the plaintiff, but this proposition is not relevant to the question of defendant's liability under the proof, for the facts wholly fail to disclose any negligence whatever in permitting the body of stone to remain standing in the quarry.

Another feature of the instruction calling for condemnation is, that as to plaintiff's contributory negligence, it tells the jury the finding should be for him unless the condition of the body of stone where he was working was "*such as to threaten such glaring, apparent and immediate danger* that a person of ordinary care and prudence would have refused to work around it under the circumstances." This is not the rule by which the plaintiff's contributory negligence should be determined and its statement in this manner infringed the rights of the defendant. The point has been expressly ruled as reversible error on an instruction con-

taining the identical language. [Bradley v. Chicago, Milwaukee, etc., R. R. Co., 138 Mo. 293, 39 S. W. 763.] When the danger is threatening, glaring and apparent, the court may declare contributory negligence as a matter of law, for in such circumstances it is obvious the plaintiff's injury results from his own want of care. But a jury may acquit the defendant on the score of contributory negligence if nothing more appears than that he encountered a risk which a person of ordinary prudence would have avoided. The declaration of the rule contained in the instruction was erroneous in the extreme in that it permitted the jury to find for plaintiff even if his conduct fell short of an ordinarily prudent person under the circumstances and declared that he might be defeated on the score of contributory negligence only on it appearing that the dangers were so glaring and threatening of immediate danger that a person of ordinary prudence would not encounter the same. It certainly goes beyond a declaration of the true rule authorizing a verdict for defendant on the ground of contributory negligence if plaintiff is found to be remiss in exercising the degree of care attributable to an ordinarily prudent person. See Bradley v. Chicago, Milwaukee, etc., R. R. Co., 138 Mo. 293, 39 S. W. 763.

It appears the identical error mentioned is incorporated in plaintiff's instruction No. 5 as well. Upon a retrial, the instructions should be rewritten and modified in accordance with the views herein expressed.

The judgment should be reversed and the cause remanded. It is so ordered. All concur.