ELIJAH ROBERTS, Respondent, v. T. B. JONES,
FREDERICK GRAY and JOHN BARTON, Appellants.

**Kansas City Court of Appeals, May 15, 1911.**

1. **MASTER AND SERVANT: Negligence: Assumption of Risk.**
The risks assumed by a servant as a part of his contract of
employment were those which naturally inhered in the work
of removing a rocky bluff by the process of blasting the
rock and shoveling away the loose materials produced by such
blasting. One of the effects of blasting, in a rocky wall, is
to shatter and crack the rocks remaining in the wall after the
blast and the ordinary dangers to the servants employed to
shovel the loose rock resulting from such effects, are to be
regarded as natural dangers of the employment for which the
master is not liable.

2. ————: ————: **Duty of Master.** But the fact that the work
conducted by the master changes the conditions of the place
in which the servant is required to labor does not absolve
the master from the duty to exercise reasonable care to avoid
the enhancement of the natural risks of the employment.

3. ————: ————: **Inspection.** Where the servant had neither
opportunity nor skill to make an inspection of the place where
he was required to work, and there was no appearance of
imminent danger, he had a right to rely on the assurance of
the foreman that the place was safe.

Appeal from Cole Circuit Court.—*Hon. William H.
Martin,* Judge.

AFFIRMED.

*J. Lionberger Davis* for appellants.

*Silver & Dumm* for respondent.

JOHNSON, J.—This is a suit by a servant to re-
cover damages for personal injuries alleged to have been
caused by the negligence of the master. The answer is a
general denial and a plea of assumed risk. The appeal
is from a judgment of $5000, recovered by plaintiff.

Roberts v. Jones.

The material facts disclosed by the evidence thus may be stated: Plaintiff was a laborer employed by defendants, Jones and Gray, who were contractors engaged in the work of widening the roadbed of the Missouri Pacific Railway Company at Jefferson City. Defendant Barton was the foreman of Jones & Gray under whom plaintiff was working at the time of his injury. To widen the roadbed it was necessary to cut away several feet from the face of a bluff on the south side of the railroad. This bluff was about forty feet high and consisted in the main of stratified rock. The general course of its face was east and west but there was a jog in the course caused by the east part of the wall being on a line a few feet south of the line of the west part. This jog was abrupt and there was a narrow wall facing east at the place of the break in the continuity of the face of the bluff which was towards the north. About twelve feet above the foot there was a narrow ledge running along the face and around the jog. Blasting had been done on the narrow wall which faced east and a gang of men under the leadership of the foreman Barton went up on the ledge to shovel the loose material. Under the directions of the foreman, plaintiff, who was a green hand, shoveled on the ledge in front of the narrow wall. While he was in a position five or six feet south of the northeast corner of the wall, an overhanging rock became detached and fell on him. This rock was about two feet long, from one foot to eighteen inches thick and projected out from the face of the narrow wall at a height of about seven feet above the ledge on which plaintiff was standing. When the foremen ordered plaintiff to work under the overhanging rock he told him the place was safe and it appears plaintiff relied on this assurance. There is evidence that before giving the order the foreman examined the place and made soundings with a crowbar. Five or ten minutes before the injury the foreman and the workmen with the exception of plaintiff went around the corner a few feet to dislodge a rock

that appeared to be in danger of becoming detached and falling down to the railroad track. This rock was five or six feet long, about eighteen inches thick, was a part of the stratum of which the rock which fell on plaintiff was a part, and the place where it protruded from the north facing wall was eight or nine feet on a straight line from the rock which fell on plaintiff. The subjoined rough shetch represents the place in a crude way.

The lines designated "Y" represent the face of the bank; the line marked, "X" is the narrow wall facing east, "C" is the line of the ledge on which the men were working. "A" is the point where plaintiff was standing and where the rock which injured him was overhanging; "B" is the point where the other men were at work dislodging the loose rock.

Just before the rock fell plaintiff heard through the wall the blows of the crowbars the men around the corner were using in dislodging the rock on which they were working and, as the rock fell, the men heard a rumbling in the wall.

The defendant Barton did not testify and the record does not disclose what the soundings he made indicated to him. So far as outward appearances went the rock which fell showed no signs of instability. An expert witness introduced by defendant testified that the fall

of the rock could not have been caused by the blows of the crowbars on the rock at the other end of the stratum. That rock was detached but the witness could not state when, with reference to the fall of the other rock. The petition alleges:

"That said injuries so received by plaintiff as afore-said were immediately and directly caused by the negligence and carelessness of said foreman, John Barton, in ordering and directing plaintiff to shovel rock and earth from said ledge, aforesaid, when the same was unsafe and dangerous to so work thereon, because of stone, rock and other material overhanging thereat, being loose and likely to fall on plaintiff and to injure him while so engaged in said work, aforesaid, and also by reason of the negligence and carelessness of said foreman in directing one John Ramey (the latter being also a servant of defendants T. B. Jones and Frederick Gray, working under the orders and directions of said foreman) to pry out and displace a rock or stone and material connected therewith (and in assisting said John Ramey so to do) from their positions in the side of said bluff, adjacent to or near the place on said ledge where plaintiff was so at work, as aforesaid, thereby causing the rock or stone and connected material, overhanging plaintiff, to become loose and to fall down on plaintiff and to injure him as already stated herein.

"That plaintiff was ignorant of the dangerous condition of said place (and of the peril incident thereto), at which he was so directed to work by co-defendant John Barton, foreman as aforesaid, of defendants T. B. Jones and Frederick Gray, and they and said foreman knew of said danger and peril to plaintiff thereat, or could have so known by the exercise of ordinary care on their part."

At the request of plaintiff the court instructed the jury, in part, as follows: "I. The court instructs the jury that if on June 10, 1910, plaintiff was employed in the service of defendants T. B. Jones and Frederick

Gray, as a laborer or workman, and was engaged in the work of shoveling and removing rock, earth and other material from the ledge on the side of the bluff mentioned in the evidence, then it was the duty of said defendants to exercise reasonable care (so far as the nature and character of the work would permit) to make the place at which plaintiff was so doing said work reasonably safe and secure for him.

"And the jurors are further instructed that if they find and believe from the evidence that defendant John Barton was plaintiff's foreman as to said work and as such foreman had the direction and control of plaintiff in and about the same, and that said defendant directed plaintiff to go on said ledge and to shovel and remove the loose rock and earth therefrom, and that plaintiff proceeded to carry out the directions of said foreman.

"And if you further find from the evidence that said ledge where plaintiff was directed to work was unsafe and insecure because of the existence of loose rock and earth in the side of the bluff above plaintiff which was liable to fall down on plaintiff and to injure him (if such was the case) and that said foreman knew of the said unsafe and insecure condition of the place where plaintiff was so at work or could have so known by a reasonably careful inspection on his part, and negligently failed to warn plaintiff of the same or to take reasonable precautions to remedy said condition.

"And if you further find from the evidence that rock, earth or other material (while plaintiff was so at work on said ledge) fell down from the side of the bluff above plaintiff and on him and inflicted and caused the injuries complained of in this action, and that said injuries were the immediate and direct result of the aforesaid negligence (if such was the cause) of said foreman, then the plaintiff is entitled to recover in this case and you will return a verdict for him and assess his damages as indicated by and in the other instructions given by the court, unless you further find that the danger of the

place at which plaintiff was so working was so obvious and manifest that he, as an ordinary prudent person, ought to have observed the same and to have refused to have worked thereat."

"II.  The court further instructs the jurors that if they find and believe from the evidence that while plaintiff was working on the ledge of the bluff referred to in evidence, and under the control and direction of said John Barton, as foreman of said work (if such was the case), loose rock, earth or other material fell from the side of the bluff from above where plaintiff was so working and down upon him and caused the injuries sued for by him in this action, and that said injuries were immediately and directly caused by the negligence and carelessness (if such was the case) of said foreman, in directing John Ramey, another employee of defendants, T. B. Jones and Frederick Gray, and also under the control and direction of said foreman (if such was the case) to pry out and displace rock or stone and material connected therewith, and in assisting said John Ramey so to do, from their places or positions in the side of the bluff adjacent to or near the place where plaintiff was so at work as aforesaid, and did thereby cause, if such was the case, rock or stone and connected material in the side of the bluff and above where plaintiff was working to become loose and displaced and to fall down on plaintiff and to cause the injuries sued for herein by him, the jurors will find the issues for plaintiff and will return a verdict for him and assess his damages as indicated in the other instructions given by the court in this case."

The first questions to engage our attention are those arising from the contention of defendants that their demurrer to the evidence should have been sustained. The risks assumed by plaintiff as a part of his contract of employment were those which naturally inhered in the work of removing a rocky bluff by the process of blasting the rock and shoveling away the loose materials produced by such blasting. The operation necessarily re-

sulted in continual changes in conditions and plaintiff assumed the risk of all such changes. One of the effects of blasting in a rocky wall is to shatter and crack rock remaining in the wall after the blast, and the ordinary dangers to the servants employed to shovel the loose rock resulting from such effects are to be regarded as natural dangers of the employment for which the master, who exercises reasonable care in the protection of his servants cannot be held accountable.

But the fact that the work conducted by the master changes the conditions of the place in which the servants are required to labor does not absolve the master from the duty to exercise reasonable care to avoid the enhancement of the natural risks of the employment. Defendants impliedly agreed when they employed plaintiff and set him to work on the ledge that they would use reasonable care to prevent the falling upon him of insecure overhanging rock. [Bradley. v. Railway, 138 Mo. 293.] Plaintiff, the servant, had neither opportunity nor skill to make an inspection of the place and as there was no appearance of imminent danger, he had the right to rely on the assurance of the foreman that the place was safe, and it was the duty of the foreman not to give such assurance and not to order plaintiff to work there until he had made a reasonable inspection of the rock and was unabe to discover that it was in an unsafe condition.

If plaintiff's injury was caused by a breach of such duty it was not due to a natural risk of the service but to the negligence of the foreman for which defendant would be liable since the servant does not assume risks caused by the negligence of his master. The mere fact .that the rock fell, of itself, does not support an inference of negligence in ordering plaintiff into an unsafe place but that fact, in conjunction with other facts and circumstances in proof, does support such inference. The falling of the rock, doubtless, was due to its partial detachment from the wall by the preceding blast and the conclusion is very strong and is much aided by the fail-

ure of the foreman to take the stand, that the soundings he made disclosed to him the fact that the rock was loose and unsafe. In such case reasonable care demanded that the rock be removed before plaintiff was ordered into the place made dangerous by its presence or, at last, that plaintiff be warned of the danger in order that he might have opportunity to refuse to encounter it or to be on guard against it. We hold that plaintiff made out a case for the jury on the first charge of negligence. As to the second, viz., that the foreman was negligent in causing the rock around the corner to be removed, we hold the evidence presents a case for the jury. The opinion of defendants' expert that such work had nothing to do with causing the fall of the rock is not conclusive. Considering the length of the two rocks, both of which were partially, if not completely, detached from the body of the wall they were not over six or seven feet apart, and we think the jury were entitled to the conclusion that the force of the repeated blows of the crowbars on the one rock was transmitted through the stratum and impacted against the rock at the opposite end at the place of its partial separation from the ledge. Such conclusion is in accord with well known physical laws and the jury were not bound by expert evidence at variance with physical law of common knowledge. The coincident facts of the blows delivered on one end of the ledge and of the fall of a loose rock from the other end appear in the relation of cause and effect and the jury were entitled to infer that a reasonably careful man in the situation of the foreman would have anticipated that the work he was prosecuting would greatly and unnecessarily enhance the risk of plaintiff.

The demurrer to the evidence was properly overrule. The objection to the two instructions quoted have been sufficiently answered in what we have said. The record is free of prejudicial error and it follows that the judgment should be affirmed.

It is so ordered. All concur.