BRADLEY v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, *Appellant.*

Division One, March 23, 1897.

1. **Damages**: MASTER AND SERVANT: PERILS OF SERVICE.  The master impliedly agrees with his servant to use reasonable care to provide as safe a place for the performance of the service as the character of the work to be done will permit; but this rule is necessarily modified if the place provided necessarily becomes dangerous in the proper progress of the work.  It is also equally well settled that a master can conduct his business in his own way, and the servant, knowing the hazards of his employment, impliedly waives the right to compensation for injuries incidentally resulting therefrom, although a different method of conducting the work would have been less dangerous.

2. ———: ———: ———.  Where plaintiff was employed by defendant railroad company to help load cars with earth from an embankment thirty feet high near the railroad track, and such embankment was undermined by defendant's steam shovel, and, while other of defendant's servants were prying against the top thereof with crowbars, all under the direction of a foreman, such embankment toppled over and seriously injured plaintiff, defendant impliedly agreed, when it employed plaintiff and put him at a dangerous place to work, that it would use reasonable care to prevent the falling of the embankment upon him; and the question of whether defendant did its duty in this respect, was a question for the jury under proper instructions.

3. ———: ———: ———: INSTRUCTIONS: CONTRIBUTORY NEGLIGENCE.  An instruction under the circumstances in this case, which told the jury, as a matter of law, that there was no contributory negligence in remaining under the bulged embankment, unless its condition was such as to "threaten glaring, apparent, and immediate danger," *held* erroneous, as not declaring a rule that would govern a man of ordinary prudence.

4. **Practice**: INSTRUCTIONS: ABSTRACT PRINCIPLES.  Instructions to juries by abstract propositions of law is condemned; the jury should be instructed as to what facts, if found to be true, would create a liability, in case an exception or qualification to a general principle should, under the evidence, be applied.

5. **Pleading**: PRACTICE: OBJECTION AFTER VERDICT.  The objection after verdict that the petition brings in redundant and immaterial matter, comes too late.

Bradley v. R'y Co.

6. **Master and Servant**: ASSIGNMENT TO WORK. When an employee is assigned to a particular work, an order from someone in authority every time he resumes work, is not necessary.

7. **Master and Servant**: FOREMAN: FELLOW SERVANT. The foreman in charge of the work was the representative of the defendant railroad, and not a fellow servant of the laborers who received their orders from him; and if the foreman was negligent, the railroad was chargeable with the consequences thereof; but this rule is necessarily modified if the place provided becomes dangerous in the necessary performance of the work.

*Appeal from the Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

*Claude Hardwicke, H. H. Field* and *Frank Hagerman* for appellant.

(1) A master owes no duty to provide a safe place for his employee when the only danger that exists arises solely by reason of the very work which the employee is required to perform. *Minneapolis v. Lundin,* 58 Fed. Rep. 529; *R'y Co. v. Jackson,* 65 Fed. Rep. 48; *Armour v. Hahn,* 111 U. S. 313, 318; *Beesley v. Wheeler,* 61 N. W. Rep. 658; *Carlson v. R. R. Co.,* 28 Pac. Rep. (Ore.) 497; *Allen v. R. R. Co.,* 37 S. W. Rep. (Tex.) 171; *Fugler v. Bothe,* 117 Mo. 475; *Millar v. Madison Car Co.,* 130 Mo. 517. (2) If the foreman had been negligent, his would have been an act of a fellow servant. *Anderson v. Winston,* 31 Fed. Rep. 528. (3) There was in this case no negligence on the part of the foreman, he having given no order to plaintiff under circumstances where there was no time for reflection and the master owing no duty as to making a provision for a safe place. *Ring v. R. R. Co.,* 112 Mo. 220, 230, 231. (4) Whatever danger there was, was perfectly evident to Bradley and was a risk assumed by him. *Jackson v. R. R. Co.,* 104 Mo. 448; *Thomas v. R. R. Co.,* 109 Mo.

187, 200; *Ring v. R. R. Co.*, 112 Mo. 220; *Junior v. Mo. Electric Co.*, 127 Mo. 79; *Lucey v. Hannibal Oil Co.*, 129 Mo. 40. (5) There is under no circumstances a requirement upon the master to provide a safe place. All that is required of him is to exercise reasonable care to provide a reasonably safe place. *Holloran v. Union, etc., Co.*, 35 S. W. Rep. 260; *Tabler v. R'y Co.*, 93 Mo. 79. (6) The last clause of instruction 1 authorizes a verdict for plaintiff upon finding certain facts, without any submission of the issue of contributory negligence. *Clay v. R. R. Co.*, 17 Mo. App. 629, 632; *Sullivan v. R. R. Co.*, 88 Mo. 169, 182. (7) Plaintiff's instruction 3 is erroneous, in that it permits a recovery for physical pain that the plaintiff "may yet suffer in the future," not limiting the finding of the jury to such future pain as plaintiff would suffer or such as was reasonably certain that he would suffer. *Fry v. R. R. Co.*, 45 Iowa, 416; *Bigelow v. Metropolitan St. R'y Co.*, 48 Mo. App. 367, 374; *Curtis v. R. R. Co.*, 18 N. Y. 534. (8) For the purpose of proving negligence in failing to blast, the court permitted testimony to be offered that after the accident, blasting was resorted to. This was error. *Alcorn v. R. R. Co.*, 108 Mo. 81, 90; *Mahaney v. R. R. Co.*, 108 Mo. 191, 200.

*J. M. Sandusky, W. K. Amick* and *R. A. Brown* for respondent.

(1) It was the duty of the master to provide plaintiff a reasonably safe place in which to perform the duties of his employment. *Keegan v. Kavanaugh*, 62 Mo. 230; *Stephens v. Hannibal & St. J. R. R. Co.*, 96 Mo. 207; *C., B. & Q. R. R. Co. v. Avery*, 109 Ill. 325; *Mo. Pac. R'y Co. v. Crenshaw*, 71 Texas, 345; *Anderson v. Dennison*, 117 Mass. 407. (2) The negligence of the foreman was the negligence of the master. He was

the vice-principal, and not a fellow servant. *McDermott v. The Hannibal & St. J. R'y Co.*, 87 Mo. 285; *Dowling v. Allen & Co.*, 88 Mo. 293; *Miller v. Mo. Pac. R'y Co.*, 109 Mo. 355. (3) The foreman was guilty of negligence. It was his duty to use reasonable care to keep the embankment in such condition that it would be safe to work about. (4) Plaintiff did not assume the risk of the falling of the embankment. The servant only assumes the ordinary and usual risks fairly incident to the employment, and this does not include the master's negligence. *Schroeder v. C. & A. R'y Co.*, 108 Mo. 331; *Pullman Palace Car Co. v. Laack*, 143 Ill. 242; *Gulf, Cal. & S. F. R. R. v. Silliphant*, 70 Tex. 623; *Aldridge v. Midland Blast & Furnace Co.*, 78 Mo. 559. (5) When the servant is ordered or required to work in a place of danger he may rely upon the superior knowledge of the master, and assume that the master will use reasonable care to protect him against danger, unless the danger is such as to threaten immediate injury, and the question as to whether the conditions are such as to threaten immediate injury is for the jury to determine. *Huhn v. Mo. Pac. R'y Co.*, 92 Mo. 440–447; *Shortel v. City of St. Joseph*, 104 Mo. 114; *Fogus v. C. & A. R. R. Co.*, 50 Mo. App. 250; *Ballard v. C., R. I. & P. R. R. Co.*, 51 Mo. App. 453. (6) Plaintiff's instruction numbered 1 properly declared the law. It is the duty of the master to use ordinary care and diligence to provide the servant a safe place at which to work. (7) Russell was the vice-principal. He had charge and control of the work, told the men when and where to work, and hired and discharged them at pleasure, and it makes no difference whether he be called superintendent, conductor, boss, or foreman. (8) The only question of contributory negligence that there was in the case was fairly submitted. The jury was told that if they found certain facts, the plaintiff would be

entitled to recover, "unless the jury further believe from the evidence that the condition of the embankment around which plaintiff was working was such as to threaten such glaring, apparent, and immediate danger, that a person of ordinary care and prudence would have refused to work around it under the circumstances." This submitted the only question of contributory negligence that could possibly have been in the case. The word "threatening" was not used. *Huhn v. Mo. Pac. R'y Co.*, 92 Mo. 440; *O'Mellia v. R'y*, 115 Mo. 205; *Warner v. R'y*, 62 Mo. App. 184; *Fogus v. R'y*, 50 Mo. App. 250. (9) The verdict was for the right party, and even if the instruction had been erroneous, the defendant was not prejudiced on account thereof. *McLaughlin v. City*, 77 Pa. St. 109–113; *Boudett v. City*, 40 Wis. 35; *Fink v. Shroyer*, 18 Ill. 418; *Weiler v. Manhattan R. R. Co.*, 6 N. Y. Supp. 320; *Browning v. Wabash Western R'y Co.*, 124 Mo. 55–71; R. S. 1889, sec. 2303; *Force v. Williams*, 35 Miss. 533. (10) The court did not committ error in admitting over defendant's objection, evidence that blasting was done after the accident occurred. *Griffith v. Gillum*, 31 Mo. App. 33; *Brill v. Eddy*, 115 Mo. 596. (11) The damages are not excessive. *Furnish v. Mo. Pac. R'y Co.*, 102 Mo. 438.

MACFARLANE, J.—An action to recover damages for personal injuries sustained by plaintiff through the alleged negligence of defendant for whom he was working as a laborer. A jury trial resulted in a verdict and judgment for plaintiff for $8,000. From the judgment defendant appealed.

The petition charges substantially that "from May 5 to June 13, 1892, plaintiff was in defendant's employ, with other laborers, engaged in digging and removing embankments of earth about thirty-five feet in height.

In doing this work defendant used a steam shovel to dig away the base of the embankment and when that had been done it would cause the top thereof to be blasted off so as to prevent its falling upon the workmen about the shovel.

"On June 13, 1892, while plaintiff was working around the shovel, defendant's agents and servants in charge of the work negligently failed to have the top of the embankment blasted down when the base thereof had been dug away by the shovel, as had been done on all other embankments which plaintiff helped to remove; but instead of blasting the top of the embankment, defendant caused two men to pry the same off with crowbars where the base had been dug away by the steam shovel, when it was impossible, and was so known to defendant, for two men to pry off the top as fast as the shovel removed the earth from the base. On account thereof the embankment became top-heavy, and likely to fall upon the men working about the shovel.  Defendant's foreman, agents, and servants in charge of the work knew, by the exercise of ordinary care could have known, of the dangerous and unsafe condition of the embankment and that it was liable to fall at any time; and while in such unsafe and dangerous condition, defendant's foreman, agents and servants in charge of the work negligently ordered and permitted the plaintiff to work around the shovel, and while so working the embankment fell upon and injured him."

The defendant's answer consisted of a general denial and pleas of contributory negligence, assumption of risk and negligence of fellow servants.

The evidence on the trial shows that defendant operated a railway through Jackson and Clay counties. In May and June, 1892, it was engaged, by means of a steam shovel, in removing earth from an embankment

along its road in Clay county, loading the earth upon cars, and carrying it over the road to Jackson county for the purpose of making a fill. The embankment, from which the earth was being taken, was about thirty feet high. Plaintiff and a number of other laborers were employed in this work under the superintendence of a foreman.

The railroad ran east and west through a deep cut with an embankment on each side. The appliances for removing the earth, and loading it upon the cars, consisted of a crane about twelve feet long with a large steel shovel at the end operated by steam power. The shovel, when operated, swung in a circle, the earth was scooped out of the embankment and the shovel of earth was swung round to the car and unloaded upon it. The shovel could not be raised higher than twelve feet so the earth was taken from the bottom of the embankment, thereby undermining it. Some of the laborers worked the shovel at the base of the embankment and others worked on top of the embankment, blasting, or prodding with crowbars, the earth down when undermined by the shovel. This was all done under the direction of the foreman.

The work, for a time, was done on the north side of the railroad, and the overhanging bank was blasted down. Three or four days before the accident the shovel had been removed to the south side where no blasting was done, but the overhanging bank was prodded down by crowbars.

Plaintiff had been engaged at this work five or six weeks before his injury. His position was at the base of the embankment about the shovel, assisting in moving and raising it, and keeping the ground level, and free of obstructions.

The evidence tended to prove that at the time of the accident the shovel had cut into the base of the

embankment until there was a bulge in the earth above, and that this condition had remained without change for three or four hours, and that plaintiff's duties required him to work adjacent to this place. Plaintiff admitted that he saw the hanging condition or bulge in the bank, but in explanation of continuing to work there he said: "I was not a judge of banks and supposed my foreman was; I relied on him telling me when that bank was dangerous." He admitted that "the dirt fell off occasionally and slipped down."

Plaintiff was working in his usual position when the overhanging bank gave way and fell upon him, causing very serious injuries. At the time of the accident the foreman was, and for thirty or forty minutes previously had been absent, having gone, as was his custom, with a load of dirt. The evidence tended to prove that earth frequently fell of its own weight, and that the foreman had frequently warned plaintiff and other men of the danger, and cautioned them to look out for themselves.

At the close of plaintiff's evidence and again at the close of all the evidence defendant asked and the court refused to direct the jury to find for defendant. At the request of plaintiff the court gave these instructions to the jury.

1. The jury are instructed that it was the duty of the defendant railway company to use every reasonable precaution to avoid exposing the plaintiff to danger, and to use ordinary care and diligence to provide him a safe place to work, and if the jury believe from the evidence that the embankment, around which plaintiff was working, as disclosed by the evidence, was allowed to become insecure and dangerous, on account of defendant's negligence, and liable to fall upon plaintiff while working around same, and that defendant knew, or by the exercise of reasonable care could have known,

of the dangerous and unsafe condition of such embankment; and if the jury believe that any overseer, superintendent, "boss" or foreman of the defendant railway company, having power and authority to manage and control plaintiff and the men working around said shovel and said embankment, and to direct their action, ordered or directed plaintiff to do the work he was engaged in doing, and that while he was so engaged, said embankment fell upon him and injured him, then he is entitled to recover in this case; unless the jury further believe from the evidence that the condition of the embankment, around which plaintiff was working, was such as to threaten such glaring, apparent and immediate danger that a person of ordinary care and prudence would have refused to work around it under the circumstances.

2. The jury are instructed that if the defendant railway company had a gang of men, among whom was plaintiff, digging down the embankment, as disclosed by the evidence, and if said men were under the control and management, and subject to the directions, of a superintendent or foreman of said defendant railway company, then said superintendent or foreman was the "vice-principal," and his acts in directing and controlling said men were the acts of the defendant.

3. The jury are instructed that if they find for the plaintiff they will assess his damages in such sum, not exceeding the sum of fifteen thousand dollars, as they may believe from the evidence will fairly compensate him for the injuries he sustained; and in determining such amount the jury will take into consideration the physical pain and mental anguish plaintiff may have suffered, if any, or that he may yet suffer in the future on account of such injuries.

I. Defendant insists that the court should have directed a verdict for the defendant for several reasons.

*First,* it is said that the injury resulted from one of the ordinary perils of the service plaintiff undertook to perform, the risk of which he impliedly assumed, under his contract of employment. The question, then, is, did plaintiff assume the risk of injury from the falling of the earth upon him?

Two well settled principles of law bear upon this question. It is well established law that the master impliedly agrees with his servant, when he employs him to perform any work or service, to use reasonable care to provide him with suitable means, appliances and instrumentalities, to do his work as safely as the necessary hazards of the employment will permit. This duty includes that of care to provide as safe a place to perform the service as the character of the work to be done will permit.

This rule has a necessary exception in case the place provided is necessarily made dangerous in performing the required service. Thus, it is said by Mr. Justice GRAY:

"The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as toward them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow-servants." *Armour v. Hahn,* 111 U. S. 318.

It is equally well settled that a master can conduct his business in his own way, and the servant, knowing the hazards of his employment as the business is conducted, impliedly waives the right to compensation for injuries resulting from causes incident thereto, though a different method of conducting the business would have been less dangerous.

Plaintiff was employed, with other laborers, to

remove the earth from a perpendicular embankment. Before his employment defendant had provided the machinery and adopted the methods for doing the work. The method required the removal of the earth from the base of the embankment, thus undermining it, and making the earth above liable to break loose and fall upon those working at the base. Plaintiff was fully advised of the manner in which the work was conducted, and presumptively being a man of ordinary intelligence, knew also the dangers he incurred from falling earth. A man of ordinary intelligence is presumed to know that when the earth is undermined it will, from its own weight, cave and fall down.

It may be said, also, that the work plaintiff was employed to do, as conducted by defendant, necessarily rendered the position of plaintiff, at the base of the bank, dangerous, and a simple employment to do the work, without more, did not imply an agreement, on the part of the defendant, to use reasonable care to protect him from the falling earth.

Defendant's counsel cite us to a number of cases claimed to be analogous in their facts to this one, and which, upon the facts hereinbefore stated, are very analogous. In those cases it is held generally that when one is employed to remove a bank of earth by first undermining the base, and prying off the top, or permitting it to cave or fall, he assumes the risk of injury from the falling earth, though it would have been safer to have taken the bank down from the top. *Griffin v. R'y Co.*, 124 Ind. 326; *Naylor v. R'y Co.*, 53 Wis. 664; *Simmons v. R'y Co.*, 110 Ill. 344; *Rasmussen v. R'y Co.*, 65 Iowa, 236; *Olson v. McMullen*, 34 Minn. 94.

It is said by DEVENS, J.: "When the servant assents to occupy the place prepared for him, and views the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him

to comprehend them, it is not a question whether such place might, with reasonable care and by a reasonable expense, have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected." *Sullivan v. India Mfg. Co.*, 113 Mass. 396.

Plaintiff would thus clearly have assumed the risk of injury from falling earth under a simple employment to work at the place assigned to him, though the manner of conducting the work exposed him to perils which might have been avoided by adopting a different method.

But there is a fact, omitted from the foregoing statement of the manner in which defendant conducted its business, which, in our opinion, puts a materially different phase upon the duty defendant owed to plaintiff. Previous to plaintiff's employment and up to the time of his injury, defendant had, by blasting or by prying with crowbars, thrown down the top part of the embankment in front of the shovel, and of the men working it, and by this means prevented to a considerable extent the dangers from falling of the earth. Plaintiff was assigned to duty by the foreman of defendant, who had charge of the work, at the base of the embankment while being operated. This was concededly a hazardous place in which to work, but. the dangers were greatly reduced by the precautions for his safety thus taken by defendant.

It can not be fairly said in the circumstances that plaintiff assumed all the risks of injury from falling earth. He only assumed such risks as were incident to the work as conducted by defendant. Defendant impliedly agreed, when it employed plaintiff and put

him at a dangerous place to work, that it would use reasonable care to prevent the caving of the embankment upon him. The circumstances, in our opinion, do not take this case out of the general rule that the master is bound to use reasonable care to keep the place to be used by the servant, in the prosecution of the work assigned to him, in as safe a condition as the nature and character of the work would permit.

Whether defendant did its duty in that respect, in this case, was, we think, a question for the jury. The evidence tends to prove that the bank was left undermined, and "bulging out" for three or four hours before the shovel was moved up to it, or at least before the earth fell. Whether the dangerous condition was such as could have been seen by reasonable examination was a question also for the jury. If its dangerous condition was known to defendant there was negligence in not righting it. If the condition was observable from reasonable inspection there was negligence in not. knowing it, if, in fact, it was unknown.

II. It is next insisted that plaintiff was guilty of contributory negligence, as a matter of law, in working under the overhanging bank of earth. Plaintiff admitted, while testifying, that he saw the bulged condition of the bank over the place he was working. The evidence also tends to show that this condition had continued three or four hours at the time of the accident. Plaintiff also testified that earth had to his knowledge frequently fallen from the embankment before this accident. There was no evidence, however, tending to prove that such fall of earth had occurred at a place at which the laborers, at the base of the embankment, were required to work.

As the business of defendant was conducted when plaintiff engaged in the service, and as it was continued

during his employment, an implied obligation rested upon defendant to protect him from falling earth. While that duty did not relieve plaintiff of his obligation to exercise care for his own safety, he had the right to rely, to some extent at least, on its observance.

In case the duty of the master requires him to observe care in protecting his servant, when engaged in hazardous work, a continuance in the work by the servant after knowledge that proper precautions have not been taken for his safety, does not, in case of an injury therefrom, bar a recovery, as a matter of law, on the ground of contributory negligence unless the danger was so obvious that any man of ordinary intelligence and prudence would have observed and avoided it.

In such case "the primary duty of the servant is obedience, and it is not to be expected that he will, upon mere imaginary danger, of which he may be conscious, assert his right to relinquish his employment. He naturally looks to his employer for the observance of all reasonable precautions, and his continuance in the service when such precautions have not been observed, is rather to be attributed to confidence reposed in those to whose superior judgment he yields." *Keegan v. Kavanaugh,* 62 Mo. 232: *Shortel v. City of St. Joseph,* 104 Mo. 120.

We do not think the danger was so patent as to charge plaintiff, as a matter of law, with contributory negligence in not leaving his work, in order to avoid it. The facts that the foreman had not caused the overhanging earth to be thrown down; that the embankment had stood for such a length of time without falling, and that the work then being done had no tendency to loosen the earth, should be taken into consideration in determining whether a common laborer, of ordinary prudence and foresight, would have antic-

ipated and avoided the danger.    In our opinion the
question was one of fact for the determination of the
jury.

III.    The first instruction is criticised in that it
tells the jury that it was the duty of defendant "to
use ordinary care and diligence to provide him" (plain-
tiff) "a safe place to work."    From what is said in a
preceding part of this opinion the duty of defendant is
too broadly stated in this instruction.    The work
plaintiff was employed to do necessarily caused the
place to become dangerous.    He assisted in creating
the dangerous condition.    In the circumstances de-
fendant could only be chargeable with the duty of
blasting or prying off the earth above the point reached
by the shovel, in order, as far as practicable, to prevent
the caving of the wall, or the falling of the earth, upon
plaintiff while at work.    The manner of doing the work
necessitated undermining the wall.    Defendant had the
right to adopt this method, though more dangerous
than taking off the earth from the top would have been.
This part of the instruction gives the jury the right to
determine whether the manner, adopted by defendant
for doing the work, rendered the place at which plain-
tiff was required to work, more dangerous than it would
have been had different methods been used.    This
court has often condemned the instruction of juries by
abstract propositions of law.    The principles of the law
of negligence have so many exceptions and qualifica-
tions that courts themselves are often at a loss in their
efforts to apply the facts of a case to a principle of law.
In case an exception or qualification to a general prin-
ciple should, under the evidence, be applied, as in this
case, the jury should be instructed as to what facts,
if found, will create a liability.

The subsequent part of the instruction, points out
the facts which would create a liability as follows:

"And if the jury believe from the evidence that the embankment, around which plaintiff was working, as disclosed by the evidence, was allowed to become insecure and dangerous, on account of defendant's negligence, and liable to fall upon plaintiff while working around the same, and that defendant knew, or by the exercise of reasonable care could have known, of the dangerous and unsafe condition of the embankment," etc.

It seems to us that this part of the instruction explains, qualifies and renders harmless what precedes it. It points out what omissions of duty on the part of defendant will constitute a neglect to provide a safe place for plaintiff to work in the circumstances in this case. It was the duty of defendant under the manner adopted for doing the work, to use reasonable precautions to keep the embankment in such a condition, as far as practicable, considering the nature of the work, as would prevent the falling of the earth upon plaintiff while doing the work assigned to him. An omission of this duty would constitute actionable negligence. The jury could not, we think, with this qualification, have been misled by the improper, unqualified announcement of a general principal of law in the beginning of the instruction.

The instruction is further criticised in that it is said to enlarge the pleadings and to deal with an act of negligence not counted upon. It is said that the petition counts upon negligence in not blasting off the top of the embankment, instead of prying it off with crowbars, as was attempted. Reading the whole petition, we think the substantial charge is that defendant neglected to use reasonable care to prevent the embankment from caving or falling on plaintiff. It is true the petition charges in effect that this protection could have been better accomplished by blasting than

by prying the earth off, but the real question is whether it had been done at all.    This charge of the petition had better have been omitted.    The case was tried on the theory that defendant neglected its duty in respect to protecting plaintiff from injury from falling earth. The objection after verdict comes too late.

That plaintiff was assigned to duty at the base of the embankment about the shovel is not questioned under the evidence.    It would make no difference whether the superintendent of the road or the foreman directed him where to work.    While there is no evidence that the superintendent gave any direction to this work or to the men employed, the instruction in specially naming him, as directing plaintiff where to work, is harmless.    When an employee is assigned to a particular work, an order from someone in authority, every time he resumes work, is not necessary.

The final criticism of this instruction is that the issue of contributory negligence was not submitted to the jury.

The plea of contributory negligence is general, without specifying the particular acts or omissions which constituted such negligence.

The only act of contributory negligence the evidence tends to prove is that of working under the embankment when its dangerous condition was apparent.    The proviso of the instruction was intended to submit this issue to the jury.

But it is insisted that the instruction, as given, was improper and did not correctly declare the law, in that it declares that proper care only required plaintiff to leave his work and get from under the overhanging bank in case its "condition was such as to threaten such glaring, apparent, and immediate danger that a person of ordinary care and prudence would have refused to work around it under the circumstances."

We held in a former part of this opinion that the evidence did not show, as a matter of law, that plaintiff was guilty of such contributory negligence as barred a recovery.    This instruction tells the jury, in effect, as a matter of law, that there was no contributory negligence in remaining under the bulged wall, unless its condition was such as to threaten "glaring, apparent, and immediate danger."    No other fair construction can be given to the instruction.    We do not think it declares the rule that would govern a man of ordinary prudence under the circumstances in this case.    What a reasonably prudent person would have done is the proper test of the character of the acts of plaintiff.

Plaintiff knew the condition of the bank; he knew that earth would break loose and fall when undermined; he knew that earth had previously fallen of its own weight, and he knew that defendant had been having the top blasted or pried off so as to prevent it from falling upon him.    He was not suddenly, without having time to reflect, ordered temporarily into a place of danger.    There was no evidence that he would have lost his position by declining to work at that place until the danger had been removed.    The dangerous condition was one that could have been corrected in a few minutes.    These were the circumstances.    If the danger was so apparent that a person of ordinary prudence, knowing the condition, would not have remained under the embankment, then plaintiff was guilty of contributory negligence and the jury should have been so instructed.    There might be cases where, under an emergency, or where the duty immediately in hand required promptness and gave no time for reflection, when such an instruction might be proper.    But here the condition of the bank had remained unchanged for several hours.    The work at which plaintiff was

engaged admitted of deliberation.   There is nothing in the circumstances that justifies the instruction.

There is no instruction given at request of defendant which in any manner remedies this one.   Instructions should be predicated on the facts of the particular case, and this one is erroneous.   It is also prejudicial, for it virtually deprives defendant of the benefit of its plea of contributory negligence.

IV.   The foreman in charge of the work was the representative of the defendant and not a fellow servant of plaintiff.   If he was negligent defendant was chargeable with the consequences.   The second instruction was therefore unobjectionable.

V.   The third instruction, in respect to damages for future suffering, is open to criticism.   The objectionable feature can be avoided on a retrial.

The judgment is reversed and cause remanded for a retrial.   BARCLAY, P. J., and BRACE, J., concur. ROBINSON, J., absent.