BENEDETTO STOBILE, Respondent, v. JOHN F. McMAHON, Appellant.

St. Louis Court of Appeals, November 6, 1916.

1. **MASTER AND SERVANT:** Injury to Servant: Res Ipsa Loquitur. The *res ipsa loquitur* doctrine does not apply in an action by a servant for injuries sustained by reason of the master's negligence in furnishing him an unsafe place in which to work.

2. ———: ———: ———: Sufficiency of Petition: Petition Construed. In an action by a servant for personal injuries, the petition alleged that defendant's foreman negligently allowed plaintiff's working place to become unsafe and dangerous by permitting a hoisting engine to be operated over plaintiff while he was performing work which he had been ordered by the foreman to do. *Held,* that the petition counts upon the theory that defendant failed to exericse ordinary care to furnish plaintiff a reasonably safe place in which to work, and does not invoke the *res ipsa loquitur* doctrine. *Held, further,* that the petition states a cause of action.

3. ———: Safe Place to Work: Duty of Master. It is not only the duty of the master to exercise ordinary care to furnish the servant a reasonably safe place in which to work, but to keep it reasonably safe for him to perform the labor required of him.

4. **DAMAGES: Inability to Work: Admissibility of Evidence.** In an action for personal injuries, evidence tending to show that plaintiff had not been working and had not been able to work since receiving his injuries, was admissible for the purpose of showing the permanency and extent of his injury and disability, notwithstanding the petition did not claim damages for loss of earnings; and the fact that the instruction on the measure of damages did not permit a recovery for loss of earnings shows that it was admitted for the purpose above stated only.

5. **EVIDENCE: Expert Testimony: Opinions: Conclusions.** In an action for personal injuries, evidence by a physician that, in his opinion, plaintiff would not be able to do heavy lifting or to perform heavy work as he could before he was injured, was admissible as expert testimony, and was not objectionable as being the statement of a mere conclusion.

6. **MASTER AND SERVANT: Injury to Servant: Instructions.** In an action by a servant for personal injuries, the petition alleged that defendant's foreman negligently allowed plaintiff's working place to become unsafe and dangerous by permitting a hoisting engine to be operated over plaintiff while he was performing work which he had been ordered by the foreman to do. An instruction for plaintiff permitted a recovery if defendant negligently allowed the place in which plaintiff was working to become dangerous, by "negligently allowing the hoisting machine *and bucket* to be operated near plaintiff." *Held,* that the instruction was not erroneous as broadening the allegations of the petition, by adding the words "and bucket" to the words "hoisting machine," since the "hoisting machine" described in the petition was composed of a cable and bucket operated by the engine.

7. **INSTRUCTIONS: Applicability to Issue.** Instructions permitting a recovery should not be broader than the allegations of the petition.

8. **MASTER AND SERVANT: Injury to Servant: Safe Place to Work: Instructions: Error Cured by Other Instructions.** In an action by a servant for personal injuries, the error in an instruction, which did not purport to cover the entire case and authorize a verdict for plaintiff, but merely dealt with the question of assumption of the risk, "that the law required defendant not only to furnish a reasonably safe place to work, but also required him to keep it so," instead of merely requiring defendant to exercise ordinary care to that end, was cured by the latter part of the instruction, which applied the instruction to the facts of the case and charged that if the jury found that the defendant's foreman neglected (that is, failed to exercise ordinary care) to adopt suitable precautions for plaintiff's protection to keep his place of work reasonably safe, and plaintiff was injured as a result of such neglect (that is, failure to exercise ordinary care), plaintiff did not assume the risk of such injury.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

R. M. *Sheppard* and J. P. *McCammon* for appellant.

(1) This is not a case in which the doctrine of *res ipsa loquitur* applies. Therefore it was incumbent upon the plaintiff to allege and prove some act of negligence upon the part of the defendant. The charge in the petition is that the defendant negligently and carelessly allowed and permitted a hoisting machine to be operated near plaintiff with same and breaking mangling and crushing plaintiff's leg, without alleging any fact or facts from which the court could say as a matter of law that it was negligence to have operated the machine at the time and under the circumstances. Removich v. Bambrick Bros. Const. Co., 173 S. W. 686; Oglesby v. Railroad, 177 Mo. 272; Fuchs v. St. Louis, 167 Mo. 620; Beeve v. Transit Co., 206 Mo. 419; Howard v. Railroad, 173 Mo. 530; Hamilton v. Railroad, 123 Mo. App., 627; Good v. Coal Company, 167 Mo. App. 175; 26 Cyc. 1411. (2) The evidence in this case merely shows that the plaintiff was in the employ of the defendant, and while in the employ of the defendant received an injury, without showing any negligence whatsoever upon the part of the defendant. The mere fact of an accident and the consequent injury resulting therefrom does not, as a rule, make out a prima-facie case. There are cases in which the doctrine of *res ipsa loquitur* applies, but that doctrine does not apply and cannot apply to the facts in this case. See cases under point 1; 26 Cyc. 1411. (3) Loss of time is a species of special damages, and in order to recover for the loss of time, it is necessary to make this an issue by a proper and sufficient allegation in the petition. There is no allegation whatever in this petition that plaintiff, by reason of his alleged injury, had suffered any loss of time or would in the future

suffer any loss of time by reason of such injury. Therefore the court committed error in permitting the plaintiff to show, over the objections and exceptions of the defendant, that he had not done any work and that his inability to do work was because of his injury, and in offering expert evidence to the effect that plaintifi's injury was such that he would not be able to continuously do hard labor.  Campbell v. Chillicothe, 175 Mo. App. 439; Hitchings v. Maryville, 134 Mo. App. 716; Keen v. Railroad, 129 Mo. App. 301; Zougker v. Peoples Union Mercantile Co., 110 Mo. App 382.  (4) It is the province of an expert witness, testifying upon a question which calls for expert evidence, to state his opinion, and not to give a statement of a positive fact or his conclusion.  The physician who had examined the plaintiff should not have been permitted to answer  a question which called for a statement of a positive fact as to whether or not the plaintiff in the future would be able to do hard labor.  This was a question which the jury was called to try and determine.  It is well settled in this State that a question and answer of this character does not call for the expression of an opinion but a conclusion of the witness, calling upon the witness to state an ultimate fact which the jury is called to try and determine. Holtzen v. Railroad, 159 Mo. App. 374;  Thomas v. Met. Street Ry. Co., 125 Mo. App. 131;  Glasgow v. Railroad, 119 Mo. 347;  Taylor v. Railroad, 185 Mo. Mo. 239;  Roscoe v. Met. Street Ry. Co., 202 Mo. 594; Lutz v. Met. Street Railway, 123 Mo. App. 499; Spaulding v. Edina, 122 Mo. App. 64;  State v. Hyde, 136 S. W. 331-332.  (5) The court committed error in giving instruction number 1 given at the request of the plaintiff.  The charge in the petition was that the defendant permitted plaintiff's place to work to become unsafe and dangerous by negligently and carelessly allowing a hoisting machine to be operated near plaintiff, thereby striking plaintiff with same and breaking, mangling and crushing plaintiff's leg.  Instruction number 1 broadened the issues by adding to the charge

in the petition, "by negligently and carelessly allowing the hoisting machine and bucket to be operated on said dump near plaintiff." It is a well settled principle of law in this State that the instructions should not be broader than the petition and should not enlarge the issues presented by the petition. Sinnamon v. Moore, 161 Mo. App. 178; Black v. Railroad, 217 Mo. 685; Craton v. Huntzinger, 163 Mo. App. 721; Orcutt v. Century Bldg. Co., 201 Mo. 424; Maynard v. Railroad, 135 Mo. App. 352; Lowenstein v. Railroad, 110 Mo. App. 686; Smart v. Railroad, 164 Mo. App. 68; Salmon v. Railroad, 181 Mo. App. 414; Scrivner v. Railroad, 169 S. W. 83; St. Louis v. Kansas City, 110 Mo. App. 655. (6) The law imposes upon the master the duty and obligation to exercise ordinary care to furnish his employees a reasonably safe place in which to work, and to exercise ordinary care to keep the same reasonably safe. Instruction number 2 was erroneous in that it told the jury that the plaintiff, in working for the defendant, assumed only the risks ordinarily and usually belonging to the business after defendant had done what the law required of him, and then asserting the positive statement "that the law required the defendant not only to furnish plaintiff a reasonably safe place to work; but also required him to keep it so." It thus imposed upon the defendant the absolute duty of furnishing a place which was reasonably safe, whereas the duty imposed upon the defendant was to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work and to exercise ordinary care to keep it reasonably safe. Pruett v. Campbell Lumber Co., 174 S. W. 164; Haas v. Car & Foundry Co., 176 Mo. App. 326; Glasscock v. Swafford Bros. Dry Goods Co., 106 Mo. App. 657; Hach v. Railroad, 117 Mo. App. 11; 26 Cyc. paragraph 2; page 1106; Bradley v. Railroad, 138 Mo. 293; Miles v. Coal & Coke Co., 172 Mo. App. 238; Britt v. Crebo, 172 Mo. App. 435; Sager v. Mining Co., 178 Mo. App. 511.

*Charles P. Comer* for respondent.

(1) The petition states a cause of action, based on the non-delegable duty of the master to exercise ordinary care in maintaining a reasonably safe place for the servant to work. Koerner v. St. Louis Car Co., 107 S. W. 481, 209 Mo. 141; Bradly v. Railroad, 138 Mo. 293, 39 S. W. 764; Benedict v. Railroad, 104 Mo. App. 218, 78 S. W. 61. (2) The evidence shows that the plaintiff, while in the employ of the defendant, was ordered to perform work in a certain place and, while obeying said order, the defendant's foreman in charge of the work, negligently and carelessly allowed the plaintiff's place to work to become unsafe and dangerous, thereby injuring plaintiff. There is no attempt to allege or prove a case of *res ipsa loquitur.* (3) There is no claim for loss of time or wages in the plaintiff's petition and no attempt was made to prove loss of time or wages. The petition alleges, plaintiff has, does and will ever suffer great physical and mental pain and bodily weakness and has been permanently injured. Evidence was tendered to show physical ability to perform hard labor before the injury and physical disability to perform hard labor after the injury in support of said allegation of physical and bodily weakness and permanent injury. (4) It is proper expert testimony for a qualified physician to give his opinion as to whether or not an injured leg is of sufficient strength to bear the weight of plaintiff's body to perform hard labor. (5) Where the petition alleges negligence in allowing a hoisting machine to be operated near plaintiff, said hoisting machine being composed of a cable and a bucket, an instruction reading "Negligently allowing the hoisting machine and bucket to be operated on said dump near plaintiff," does not broaden the issues and could not possibly mislead the jury, as the bucket is part of the hoisting machine. (6) Plaintiff's instruction number 2, on the assumption of risk, was not erroneous in defining defendant's risk liability, when it broadly stated the duty of master toward the servant and fol-

lowed same with a specific application to the facts of this particular case as to assumption of risk and did not attempt to lay down the question of defendant's liability, which had already been covered in plaintiff's instruction number 1.

THOMPSON, J.—This is an action for damages for personal injuries. The plaintiff secured a verdict and judgment in the trial court. A motion for a new trial was filed by defendant, which was overruled by the court, and he appealed.

The petition in the case was as follows:

"Plaintiff states that on or about the —— day of March, 1913, he was in the employ of the defendant, and while .pursuing the duties of such employment defendant's foreman in charge of and directing plain- tiff's work ordered plaintiff to assist in removing a large timber from one place to another. That while plaintiff was obeying said order defendant's foreman negligently allowed plaintiff's place to work to become unsafe and dangerous, in that said foreman negligently and carelessly, and in disregard of plaintiff's safety allowed and permitted a hoisting machine to be oper- ated near plaintiff, thereby striking plaintiff with same and breaking, mangling and crushing plaintiff's leg. Plaintiff states that as a result of said negligence and injury plaintiff has, does and will ever suffer great physical and mental pain and bodily weakness and has been permanently injured. That as a result of said negligence and injury plaintiff has, does and will ever expend large sums of money and incur indebtedness in and about the treatment of said injuries, suffering and weakness."

The answer was a general denial and a plea of assumption of risk.

The evidence tended to show that, during the month of March, 1913, when the plaintiff was injured, the de- fendant was engaged in constructing a sewer in the northwest part of the city of St. Louis. At the time of the injury, defendant and his men were engaged in

the digging of a ditch one hundred and thirty or one hundred and forty feet long and some seventeen feet wide. At one end of this ditch was an engine, which furnished the power for a hoisting machine composed of a cable and bucket. This cable extended over the ditch from 'the end where the engine was placed to a point near the other end of the ditch where the excavating was being done. The dirt was taken from the ditch by means of a bucket which was attached to the end of the cable and which upon being filled was hoisted out of the ditch and thence backward towards the engine where the bucket would be lowered and dumped. This dump, at the time of the accident involved in this case, was about fifteen feet high and seventeen or eighteen feet wide and forty or fifty feet long, and was narrower at the top and. sloped to the bottom. The dirt from the ditch was brought back along the cable in the bucket, as aforesaid. When the bucket was over that part of the dump where it was to be emptied it was lowered to the top of the dump where a man located for that purpose would trip the bucket—that is, with a stick would knock loose a catch on the side of the bucket so that it would turn upside down and the dirt would fall from the bucket on top of the dump. Occasionally when the bucket had been tripped by the man on top of the dump all of the earth therein would not come out of the bucket, and on those occasions it would be dragged or jolted along the top of the dump in order to shake out of it the remaining earth or dirt.

The evidence showed that the operation of the hoisting machine, which was composed of the cable and bucket, was guided by a man, known as a signal man, who stood at one side of the ditch and with an electric button signaled the engineer. A signal would be given by this man to the engineer when the bucket was filled in the ditch and ready for hoisting. After the bucket was hoisted, another signal would be given by this man to the engineer, to .draw in the bucket over the dump, and then when the bucket had reached the

right spot on the dump, the signal man would signal to the engineer to lower the bucket where it was dumped.

On the day of the accident, the plaintiff was working in that part of the ditch where the dirt was being hoisted out by means of the hoisting machine and bucket. The defendant had in charge of the work a foreman. This foreman ordered the plaintiff and another man to come up out of the ditch and go to the place where this earth was being dumped and take some timbers away from the foot of the dump. While the plaintiff and the other laborer were obeying the order of the foreman, and while working at the foot of the dump in removing these timbers, which were partially covered by dirt of the dump, the hoisting machine was kept operated, and upon the bucket being lowered to the top of the dump, and after it was tripped by the man on top of the dump, and while it was being dragged along on top of the dump for the purpose of jolting out the remaining earth therein, it rolled down the side of the dump and struck the plaintiff, breaking his leg in three places between the knee and ankle, and for this and other injuries received by being struck by the bucket the plaintiff brings this suit.

Defendant's foreman and defendant's signal man, above referred to, at the time the foreman gave the order mentioned above to the plaintiff to remove the timbers, were standing close together on top of the ground right over the excavation where plaintiff was working.

The foreman who gave the order above mentioned, testified:

"The machinery was in good working order, the bell system was in good order, the signal man did obey his orders; that when he ordered these men to go in and get those timbers out of the dump he did not tell the signal man not to operate the bucket while they were getting them out and that it was a mistake to do it that way; that he didn't say anything to any-

body about not operating the bucket while those men were in there.''

The man who was working on top of the dump, whose business it was to trip the bucket and let out the dirt, testified as follows:

''I had been working on the dump two months. John (meaning the plaintiff) had come up there to get the timbers before. He sent John, generally, or somebody else, most every day. At any time before, when John came up there after timbers, the bucket was never dumped up over him. . . . They always waited until the man got away from the bottom of the dump before they dumped the bucket and started it back.'' .

At the instance and request of the plaintiff, the court gave the following instructions:

''INSTRUCTION No. 1.

''The court instructs the jury that if you find and believe from the evidence that on or about the —— day of March, 1913, the plaintiff was in the employ of the defendant, and while pursuing the duties of such employment, defendant's foreman in charge of and directing plaintiff's work, ordered plaintiff to assist in removing timbers from the foot of the dump mentioned in the evidence, and that while plaintiff was obeying such order, defendant's foreman negligently allowed plaintiff's place to work, in removing said timbers, to become unsafe and dangerous by negligently and carelessly allowing the hoisting machine and bucket to be operated on said dump near plaintiff, thereby striking plaintiff and injuring him with same, then your verdict should be for the plaintiff, unless you further find and believe the risk of such danger and injury was one assumed by plaintiff, as hereinafter explained in other instructions.''

''INSTRUCTION No. 2. .

''The court instructs the jury that the plaintiff in working for the defendant assumed only the risks ordinarily and usually belonging to the business, after defendant had done what the law required of him.

The law required the defendant not only to furnish plaintiff a reasonably safe place to work, but also required him to keep it so, and if you find and believe from the evidence that defendant's foreman allowed a hoisting machine to be operated near plaintiff while removing. said timbers, thereby injuring plaintiff, and that in so doing said foreman neglected to adopt suitable precautions for plaintiff's protection, to keep the plaintiff's place to work reasonably safe, and the plaintiff was injured as a result of such neglect, the plaintiff did not assume the risk of such injury.''

## POINT I.

The appellant insists that the trial court erred in allowing any evidence to be introduced under the petition, on the ground that it does not state facts sufficient to constitute a cause of action against the defendant. The appellant's argument upon this point is based on the idea that the petition is drawn on the theory that the doctrine of *res ipsa loquitur* applied in the case and that the doctrine does not apply in this sort of a case, and cites many authorities supporting the proposition that the doctrine of *res ipsa loquitur* does not apply in this case. We fully agree with the learned counsel that the doctrine of *res ipsa loquitur* cannot be invoked in this case, but the counsel for the appellant is mistaken when he argues that the petition is drawn upon that theory. The petition sets out that the defendant's foreman negligently allowed plaintiff's place to work to become unsafe and dangerous, in that the said foreman negligently and carelessly allowed and permitted the hoisting machine to be operated while plaintiff was performing the work he had been ordered to do. It is, therefore, plainly to be seen that the negligence charged in the petition consisted of the failure on the part of defendant to exercise reasonable and ordinary care to furnish to the plaintiff a reasonably safe place in which to do the work he was directed to do. As stated before the authorities cited by the learned counsel for the appellant on this pro-

position are not in point.    They simply held that in this kind of a case the doctrine of *res ipsa loquitur* cannot be invoked, but they clearly have no application to this case, for the reason that this case is predicated upon the duty of the master to exercise ordinary care to furnish and maintain a reasonably safe place for the servants to   work.    [Koerner v. St. Louis Car Company, 209 Mo. 141, 107 S. W. 481;  Bradley v. C. M. & St. P. Ry. Co., 138 Mo. 293, 39 S. W. 763; Benedict v. C. G. W. Ry., 104 Mo. App. 218, 78 S. W. 60.]

In the case of Koerner v. St. Louis Car Company, 209 Mo. 141, 107 S. W. 481, a painter was ordered by his foreman to work on a car and while the painter was performing the work he was ordered to do, he was injured by a switching crew moving the car.    In that case the Supreme Court speaking through GANTT, C. J., said:

"But there is another view upon which the plaintiff was entitled to have his case submitted to the jury.    It is the duty of the master to provide and maintain a reasonably safe place for his servant to work.    Wendler v. Furnishing Company, 165 Mo. 527; Herdler v. Stove & Range Co., 136 Mo. 3;  Moore v. Railroad, 85 Mo. 588;  Curtis v. McNair, 173 Mo. 1. c. 280;  Purcell v. Shoe Co., 187 Mo. 1. c. 285.    When the defendant,. through the paint boss, Mehlin, sent the plaintiff to work upon the unfinished car, on one of its tracks, it was its duty to provide against other cars running down against the car upon which he was working and to see that other cars which were pulled out were not attached to the car upon which he was working without giving him warning of its intention to move the said car.    While the servants in entering the service of the master assumes the risks that ordinarily and usually are incident to the business being conducted by the master, the servant does not assume the risk arising from the master's neglect to adopt suitable precaution for his safety.    The duty of the master in this regard is a continuing one and it will

not suffice to say that when plaintiff went to work on the car it was a reasonably safe place. If the place was afterwards rendered unsafe by the negligent act of the defendant in sending a switching crew in there who negligently pulled the car upon which plaintiff was working without giving him warning of their intention to move it, then defendant was liable for the consequences of the negligent act of the switchman. The plaintiff had the right to presume, in the absence of knowledge to the contrary, that the defendant would furnish him a reasonably safe place to work and that he would not imperil his safety by sending its servants in there to move the car upon which he was working without notifying him. [Doyle v. M., K. & T. Trust Co., 140 Mo. 1.]''

In the case of Bradley v. C., M. & St. P. Ry., 138 Mo. 293, 39 S. W. 763; it is said:

''It cannot be fairly said in the circumstances that plaintiff assumed all the risks of injury from falling earth. He only assumed such risks as were incident to the work as conducted by defendant. Defendant impliedly agreed, when it employed plaintiff and put him at a dangerous place to work, that it would use reasonable care to prevent the caving of the embankment upon him. The circumstances, in our opinion, do not take this case out of the general rule that the master is bound to use reasonable care to keep the place to be used by the servant, in the prosecution of the work assigned to him, in as safe a condition as the nature and character of the work would permit.

''Whether defendant did its duty in that respect, in this case, was, we think, a question for the jury. The evidence tends to prove that the bank was left undermined, and 'bulging out' for three or four hours before the shovel was moved up to it, or at least before the earth fell. Whether the dangerous condition was such as could have been seen by reasonable examination was a question also for the jury. If its dangerous condition was known to defendant there was negligence in not righting it. If the condition was obser-

vable from reasonable inspection there was negligence in not knowing it, if, in fact, it was unknown.''

From the above authorities and the cases therein cited it is readily seen that it is not only the duty of the master to exercise reasonable and ordinary care to furnish the servant a reasonably safe place in which to work, but to keep it reasonably safe for the servant to perform the labor required of him. It follows, therefore, from what has been said in the above authorities that the petition stated a cause of action and the court committed no error in allowing evidence to be introduced to support it.

## POINT II.

The appellant insists that the court committed error in overruling defendant's motion in arrest of judgment, because the petition was not sufficient to support the verdict of the jury. What has been said above disposes of this point, for it is our opinion that the petition does state a cause of action.

## POINT III.

The appellant complains that the trial court erred in allowing in the evidence, over objection, testimony tending to show that the plaintiff had not been working, and was unable to work, since he had left the hospital where he was taken upon receiving the injuries. The reason given by the appellant for error in this particular is based upon the ground that there is no claim in the petition for loss of services and that, therefore, the evidence was incompetent. A careful reading of the record shows that this evidence was admitted by the trial court simply to show the permanency and extent of plaintiff's injuries and disabilities, which were set forth in the petition, and for this purpose it was clearly ad-. missible. In the instruction on the measure of damages, given on behalf of plaintiff, no claim was made that plaintiff was entitled to recover for any loss of services, so that it is very clear that no error was committed by

the trial court in allowing this testimony, and it is equally clear that the trial court admitted the evidence to show only the extent and permanency of plaintiff's injuries, and not for the purpose of allowing a recovery for the loss of services.

## POINT IV.

During the course of the trial one Dr. Frazer, testified that he had many years' experience as a physician and surgeon, and had taught in many medical colleges, and further testified as follows:

"Q. Now, I will ask you to tell the jury what your opinion is with reference to the permanency of that injury.

Objected to.

The Court: Have you examined him—the plaintiff? A. Yes, sir.

The Court: When? A. The 29th of December, 1913.

The Court: He may answer.

To which ruling of the court counsel for defendant then and there duly excepted. A. This is a permanent injury.

Q. What is your opinion with reference to this man's leg becoming normal and as to his being able to perform heavy labor?

Objected to because under the pleadings there is no issue made as to plaintiff being rendered unable to perform heavy labor or that he has lost or will lose in the future any services of any kind or character.

Objection overruled; to which ruling of the court counsel for defendant then and there duly excepted.

A. In shape and in color of the skin—condition of the skin—it will never become normal. He will be able to walk on it; as time goes on he will be able to do some work, but never able to sustain any great weight for any considerable length of time on the extremity.

Q. With reference to heavy lifting or heavy labor, will he ever be able to do such work as he could before?

Objected to because it calls for a conclusion of the witness and calls for the witness to determine a fact

which should be submitted to the jury, and for the further reason that under the pleadings in this case it is incompetent, irrelevant and immaterial, there being no charge or allegation in the petition that the plaintiff had lost or would in the future lose any labor by reason of his injuries; and for the further reason that the question should have called upon the witness to give his reasons and not to have stated a fact which should have been left to the jury.

Objection overruled; to which ruling of the court counsel for defendant then and there duly excepted.

A. He will not be able to continuously do hard labor. So far as the shape of the leg, or its configuration, is concerned it will never be normal again. There will always be more or less swelling around the ankle joint. The bones themselves will never be quite normal, because where the union has taken place a callous has been formed and thrown out, absorbing the softer tissues in the leg; the muscles particularly. It will be impossible for this man to do hard work, that is, contiously. It may be, in the course of long years, for a length of time, for maybe a few hours in a day, that he can put some weight on that extremity."

The appellant complains that the court erred in allowing the physician and surgeon to answer the last question on the ground that it calls for a conclusion of the witness, and is not an opinion, and cites many authorities, among them being the following: Holtzen v. Railroad, 159 Mo. App. l. c. 374; Thomas v. Metropolitan Street Railway Company, 125 Mo. App. l. c. 374; Thomas v. Metropolitan Street Railway Company, 125 Mo. App. 131, 100 S. W. 1121; Glasgow v. Railroad, 191 Mo. 347, 89 S. W. 915. These cases do lay down the principle that an expert witness or a physician can only give his opinion and cannot testify to conclusions, but we believe that they have no application to the point involved here, for it is clear upon the reading of the testimony of the doctor that the question calls for his opinion as to whether or not the plaintiff would be able to do heavy lifting or heavy

labor or work as he could before he was injured, and it is clearly a matter for expert testimony.

## POINT V.

Instruction No. 1 given for the plaintiff contains the words: "negligently and carelessly allowed the hoisting machine and bucket to be operated on said dump near plaintiff." The appellant contends that this instruction is broader than the petition in that the words; "and bucket" are added to the words: "hoisting machine," the charge in the petition being: "negligently and carelessly and in disregard of plaintiff's safety allowed and permitted a hoisting machine to be operated near plaintiff." This point is very technical and is, we believe, without merit. The evidence clearly shows that the bucket was a part of the hoisting machine just as the cable to which the bucket was attached was a part of the hoisting machine. The instruction fits, exactly, the evidence which was introduced on the charge in the petition. The hoisting machine was composed of a cable and the bucket, which were operated by the engine and, of course, the words: "hoisting machine" set forth in the petition include both the cable and the bucket. Viewed in this light, we do not believe that the addition of the words: "and bucket" added to the words: "hoisting machine" can be considered as broadening the allegations of the petition or allowing plaintiff to recover on some grounds of neglect not set forth in the petition, and could in no way possibly have misled the jury. The principle contended for by the learned counsel for the appellant that the instructions should not be broader than the petition is, broadly speaking, the law, but we do not believe that the cases cited are applicable to this instruction.

## POINT VI.

The appellant contends that the court erred in giving instruction number 2 on behalf of the plaintiff, and argues that it is wrong because it contained the

following general declaration of law: "That the law required the defendant not only to furnish plaintiff a reasonably safe place to work but also required him to keep it so;" the point being, that it is not the absolute duty of the master to furnish a reasonably safe place for the servant to work, but it is only his duty to exercise reasonable and ordinary care to furnish the servant with a reasonably safe place in which to work, citing: Pruett v. Campbell Lumber Company, 188 Mo. App. 347, 174 S. W. 164; Haas v. Car & Foundry Company, 176 Mo. App. 326; Glassock v. Swafford Bros. Dry Goods Company, 106 Mo. App. 657, 80 S. W. 364; Bradley v. C., M. & St. P. R. R. Co., 138 Mo. 293, 39 S. W. 763, and others. The above cases undoubtedly establish the rule that it is simply the duty of the master to exercise reasonable and ordinary care to furnish a reasonably safe place for the servant to work. But the whole instruction must be read together, and we believe that the latter part of the instruction, and the part immediately following the words complained of, cured the general statement of the law, in that it applies the instruction specifically to the facts of the case and brings it within the correct rule of law.

In the case of Pruett v. Campbell Lumber Company, 174 S. W. 164, Judge ALLEN speaking for this court said:

"It is quite apparent that the judgment must be reversed because of error in giving plaintiff's first instruction, the only instruction purporting to cover the question of defendant's liability. This instruction authorizes a recovery if the jury find that plaintiff's injury, if any, 'was due to the negligence and carelessness of the defendant company in not furnishing plaintiff with a reasonably safe place to work.' Not only does this instruction proceed upon the theory that it is the absolute duty of the master to furnish the servant a reasonably safe place to work, whereas the master's duty is to exercise ordinary care to that end, but it is a mere general declaration of what purports to be the law applicable to a master and servant case, without

any application whatsoever to the facts in the evidence. It fails to require the jury to find the specific negligence charged, which is alleged to have rendered unsafe the place in which plaintiff was required to work, but, on the contrary, permits a recovery if the jury believe that the defendant in any way failed to furnish plaintiff with a reasonably safe place in which to work. Such instructions have been repeatedly condemned. [See Feldewerth v. Wabash R. Co., 181 Mo. App. 630, 164 S. W. 711, and authorities there cited.]''

In the case at bar the instruction complained of does not cover the entire case and direct the verdict, but only covers the question of the assumption of risk. Instruction number 1, given on behalf of plaintiff, covered the entire case and directed the verdict, and instruction number 2, while stating the principle broadly in the first part of the instruction, continues by applying the facts in the case to the correct rule of law. We believe, therefore, that both of the objections raised by Judge ALLEN in the Pruett case, supra, were complied with. The latter part of the instruction told the jury that if they found that defendant's foreman neglected (that is, failed to exercise ordinary care) to adopt suitable precautions for plaintiff's protection, to keep the plaintiff's place of work reasonably safe, and the plaintiff was injured as a result of such neglect (that is, failure to exercise ordinary care), the plaintiff does not assume the risk of such injury. We believe that the application of the rule to the facts as set forth in this part of the instruction cured the defect in the instruction complained of. This instruction on the assumption of risk is within the rule, and almost in the very words laid down in the case of Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481, quoted from at length above.

In the case of Pendergrass v. Railroad, 179 Mo. App. 517, 162 S. W. 712, this court held that the instruction which in substance told the jury that it was defendant's duty to furnish appliances ''such as a ladder for means of ingress and egress to and from said

pump that were reasonably safe, secure and sufficient for the transaction of its business,'' was cured by the latter part of the same instruction which told the jury that if they should find that defendant neglected its duty in this behalf etc., and that there was a defective or insufficient crosspiece or rung upon' the ladder and that defendant knew thereof ''or by the exercise of ordinary care and prudence could have known the same'' and that by reason thereof such crosspiece or rung of the ladder broke and gave way and thereby caused plaintiff to fall, and that plaintiff exercised ordinary care for his own safety, then the verdict should be for plaintiff.

Judge ALLEN, speaking for this court, said:

''This instruction is assailed upon the ground that it places upon defendant the absolute duty to furnish plaintiff a reasonably safe appliance or place to work; whereas, the law requires only that defendant use ordinary care to furnish a reasonably safe appliance or place to work.

''It is, of course, quite true, as appellant asserts, that the master is not an insurer of the absolute safety of the appliance furnished the servant, or of the place furnished him to work. The master's duty is unquestionably to exercise ordinary care to such end. However, we think that the instruction under consideration is not open to the attack made upon it. It is true that the earlier part of the instruction tells the jury that it was defendant's duty to furnish appliances, etc., that were reasonably safe and sufficient. Further on in the instruction, however, the jury are required to find that the defendant either knew of such unsafe or insufficient condition thereof, or by the exercise of ordinary care and prudence could have known of the same. [See Girard v. Coke & Coal Co., 207 Mo. 242, 105 S. W. 767.]''

In the case of Girard v. Coal & Coke Co., 207 Mo. 242, 105 S. W. 767; GRAVES, J., speaking for the court said:

''The contention is that this instruction states too broadly the measure of duty owing by the defendant

to the plaintiff. In other words, defendant says that this instruction makes it the absolute duty of defendant to furnish plaintiff a reasonably safe entry, whereas the law only requires the defendant to use ordinary care to keep the entry way in a reasonably safe condition. The criticism is directed to the first paragraph of the instruction. This court upheld a verdict in a case where a very similar instruction was given. [Smith v. Fordyce, 190 Mo. l. c. 12.] The first part of the instruction in the Smith case, supra, was fully as strong as the instruction now in question. But aside from this, when the whole instruction is read together, we think the law was properly declared. The broad statement of general principles is modified by the second paragraph of the instruction.

"In the case of Bradley v. Railroad, 138 Mo. l. c. 308, where there was under consideration a very similar instruction, upon this point, that is, as to the modification of the broad general statement in the first part of the instruction by a second and subsequent clause, where the application of the law is made to the facts, the Supreme Court said: 'It seems to us that this part of the instruction explains, qualifies and renders harmless what precedes it. It points out what omissions of duty on the part of defendant will constitute a neglect to provide a safe place for plaintiff to work in the circumstances in this case.'

"So in this instruction. The broad statement of duty contained in the first paragraph is modified by the explanatory language of the second paragraph. The instruction will not be condemned for the reason urged first by defendant."

We believe that the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.